**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ERNEST N. FINLEY, JR. and JENNIFER M. REAVES,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | |
| **STEVEN L. REED; THE CITY OF MONTGOMERY;  THE ALABAMA ETHICS COMMISSION; JOHN PLUNK; LYN STUART; BEVERLYE BRADY; STANTON H. MCDONALD; BRIG. GEN (R) EDWARD F. CROWELL; THOMAS ALBRITTON; CYNTHIA RAULSTON; and BYRON BUTLER,** | ) ) ) ) ) ) ) ) ) ) | |
| | ) | **PLAINTIFFS DEMAND A** |
| | ) | **TRIAL BY STRUCK JURY** |
| **Defendants.** | ) | |

**COMPLAINT**

**JURISDICTION AND VENUE**

1.      Plaintiffs Ernest N. Finley, Jr. and Jennifer M. Reaves bring this action

to redress violations of their civil rights caused by Defendants Steven L. Reed, the

City of Montgomery, the Alabama Ethics Commission, John Plunk, Lyn Stuart,

Beverlye Brady, Stanton H. McDonald, Brig. Gen. (R) Edward F. Crowell, Cynthia

Raulston, and Byron Butler. They bring claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Alabama tort law.

2.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper under 28 U.S.C. §1391 because the alleged unlawful conduct occurred in Montgomery County, Alabama.

## PARTIES

4.      Plaintiff Ernest N. Finley, Jr., was, at all times relevant to this Complaint,  an adult resident of the City of Montgomery which is in Montgomery County, Alabama.

5.      Plaintiff Jennifer M. Reaves was, at all times relevant to this Complaint, an adult resident of the City of Montgomery which is in Montgomery County, Alabama.

6.      Defendant Steven L. Reed was, at all times relevant to this Complaint, the Mayor of the City of Montgomery, Alabama.  He is sued in both his official and individual capacities.

7.      The City of Montgomery is a municipality located within the State of Alabama.

8.      Defendant Alabama Ethics Commission is a governmental agency pursuant to the laws of the State of Alabama. The Alabama Ethics Commission aids

2

in enforcing the Alabama Ethics Act and its duties are governed by the Code of Alabama (1975) §§ 36-25-4 to 36-25-4.3. Its actions as a governmental entity are "state actions" within the meaning of the Fourteenth Amendment to the United States Constitution.

9. Defendant Beverlye Brady was, at all times relevant to this Complaint, Chair of the Alabama Ethics Commission. She is sued in both her individual and official capacities.

10. Defendant John Plunk was, at all times relevant to this Complaint, Vice Chair of the Alabama Ethics Commission. He is sued in both his individual and official capacities.

11. Defendant Lyn Stuart was, at all times relevant to this Complaint, a Member of the Alabama Ethics Commission. She is sued in both her individual and official capacities.

12. Defendant Stanton H. McDonald was, at all times relevant to this Complaint, a Member of the Alabama Ethics Commission. He is sued in both his individual and official capacities.

13. Defendant Brig. Gen. (R) Edward F. Crowell was, at all times relevant to this Complaint, a Member of the Alabama Ethics Commission. He is sued in both his individual and official capacities.

14.   Defendant Thomas B. Albritton was, at all times relevant to this Complaint, the Executive Director of the Alabama Ethics Commission.  He is sued in both his individual and official capacities.

15.   Defendant Cynthia Raulston is an adult resident of Montgomery County, Alabama. Suit is brought against Raulston in both her individual and official capacities. Defendant Raulston is an attorney admitted to the Alabama State Bar. At all times pertinent to the allegations of this Complaint, Defendant Raulston was employed as General Counsel with Defendant Alabama Ethics Commission.

16.   Defendant Byron Butler is an adult resident of Montgomery County, Alabama. Suit is brought against Butler in both his individual and official capacities. At all times pertinent to these allegations, Defendant Butler was employed as Senior Special Agent with Defendant Alabama Ethics Commission.

## **FACTS**

PLAINTIFFS' SERVICE TO THE MONTGOMERY POLICE DEPARTMENT

17.   Plaintiff Ernest N. Finley, Jr. ("Finley") is a Black male.  He was hired by the City of Montgomery in 2015 to serve as Chief of Police with the Montgomery Police Department.  He served in that position until June 2021.  At the time of his hiring, Finley had served as a police officer for 29 years, having begun his career with the Atlanta Police Department in 1986, serving first as a patrol office and later as Deputy Chief of Field Operations.

18.	Finley was responsible for supervising the entire Montgomery Police Department, which consisted at the time of approximately 200 police officers. Finley reported to Mayor Reed.

19.	Plaintiff Jennifer M. Reaves ("Reaves") is a White female.  She was employed with the Montgomery Police Department for twenty-six (26) years and was promoted to the position of Deputy Chief of Operations in July 2020.

20.	Plaintiff Finley promoted Reaves to the position of Deputy Chief of Operations.

21.	Beginning in October 2020, Finley and Reaves, in the line and scope of their official duties and responsibilities, investigated approximately 12 Montgomery police officers for violations of Montgomery Police Department policies and Alabama ethics rules. These investigations involved allegations of fraud, theft and second jobs the officers were working.

22.	The results of Finley's and Reaves' investigations were forwarded to the Investigator for the City.

23.	All 12 officers investigated by Finley and Reaves were found guilty of violations of varying degrees.  Five officers reporting to Reaves were found guilty of ethics violations.  The remaining officers reported to Deputy Chief of Staff Zedrick Dean, a Black male.  The remaining officers under Dean were either not guilty of ethics violations or the violations were considered minor.

RESENTMENT AGAINST PLAINTIFFS IN THE CITY AND THE POLICE DEPARTMENT.

24.   Following these investigations and the disciplining of officers, a number of officers within the Montgomery Police Department, with whom Finley and Reaves worked on a daily basis, began a regimen of regular harassment, retaliation, and insubordination toward Plaintiffs.

25.   This harassment, retaliation, and insubordination were orchestrated by the Mayor of Montgomery, Steven L. Reed ("Reed"). Reed, a Black male, was upset that Finley had disciplined Black police officers and had promoted Reaves, a White police officer, to Deputy Chief of Operations.

26.   Reed plotted with others in the Montgomery Police Department to undermine the authority and credibility of Finley and Reaves and to portray them in a negative and false light as negligent in carrying out their sworn duties with the Montgomery Police Department.

27.   Reed, working through certain police officers who agreed with him, opposed Finley's and Reaves' efforts to enforce the disciplinary policies within the Police Department and to get officers to comply with the same.

28.   Reed encouraged police officers to lodge false complaints about Finley and Reaves with the Montgomery City Council, City Investigations, and the Alabama Ethics Commission (the "Ethics Commission").  Reed was motivated to

take these actions in order to turn the Montgomery Police Department and the general public against Finley and Reaves because of their races.

29.    On or about April 6, 2021, Reed and others caused false complaints to be lodged against Finley and Reaves with the Montgomery City Council.

PROCEEDINGS BEFORE THE MONTGOMERY CITY COUNCIL.

30.    The complaints lodged against Finley and Reaves became the subject of a meeting of the Montgomery City Council.  Reed told Finley and Reaves that they would not be allowed to have anyone representing them speak in their defense at the meeting or to defend the allegations against them.  Reed prohibited them from speaking and insisted they sit in silence during the Montgomery City Council meeting. Further, Reed encouraged police officers to speak against Finley and Reaves during this public meeting.

PROCEEDINGS BEFORE THE ETHICS COMMISSION.

31.    Reed, and agents acting on his behalf, then forwarded the complaints that had been lodged against Finley and Reaves with the City Council to the Alabama Ethics Commission.  Specifically, those complaints were forwarded to Senior Special Agent Byron Butler ("Butler") for handling and investigation.

32.    At this time the Ethics Commission was comprised of Beverlye Brady, Chair; John Plunk, Vice Chair; Lyn Stuart; Stanton H. McDonald; and Brig. Gen.

(R) Edward F. Crowell. Thomas B. Albritton was the Executive Director of the Ethics Commission.

33.     The Ethics Commission is authorized by statute to receive complaints and conduct investigations into violations of the Alabama Ethics Act ("the Ethics Act") and Fair Campaign Practices Act. The Ethics Commission is also authorized to issue advisory opinions that offer protection to the person "at whose request the opinion was issued," as well as to "prescribe, publish, and enforce rules" in accordance with the Alabama Administrative Procedures Act to carry out its duties under the Ethics Act. Ala. Code (1975) §§ 36-25-4(a)(9), (11).

34.     A respondent to an ethics complaint is given notice of the charges filed against them and an opportunity to appear before the Ethics Commission at a hearing where "the laws of due process shall apply." *Id*. at § 36-25-4(d).

35.     The Ethics Commission has promulgated administrative regulations further governing the procedures for Ethics Commission hearings, including the privileges afforded respondents. Ala. Admin. Code r. 340-X-1-.01. For example, respondents to an ethics complaint are permitted to testify in their own defense but are not allowed to confront or cross-examine witnesses testifying against them. *Id*. at 4. 340-X-1-.01(5)(a), (c). Respondents may call witnesses in their defense but may not be present while the witnesses testify and are questioned by the Ethics Commission. *Id*. at (d).

36.    If after a hearing, the Ethics Commission finds "probable cause" that a person committed a crime by violating the Ethics Act, it refers the case to the district attorney of the appropriate judicial circuit or the Attorney General for appropriate legal action.  Ala. Code (1975) § 36-25-4(i). The Ethics Commission's findings of probable cause are reported in the minutes of Ethics Commission meetings, include the name of the respondent, and are publicly viewable on the Ethics Commission's website.

37.    Butler had previously worked for the Montgomery Police Department and reported directly to Reaves while employed there. Butler has remained personal friends with several police officers, including those previously disciplined by Finley and Reaves for theft and fraud.

38.    Butler's previous supervision by Reaves should have conflicted him from investigating Reaves and/or Finley. Neither the members of the Ethics Commission nor its Executive Director prohibited Butler from directing the investigation of Reaves or Finley nor did they monitor his actions.

39.    There had been prior complaints to the Ethics Commission about Butler misusing his position as an investigator, including allegations that he had intimidated employees of a local employer and had threatened a local business owner.  Butler's

intimidation tactics were the subject of a lawsuit[1] and received media and internet publicity[2], causing ethics charges to be filed against Butler.

40.    Butler enlisted Cynthia Raulston to join in his investigation. Raulston, as the then General Counsel of the Ethics Commission, was in a position to recognize Butler's conflict but she made no effort to stop him from investigating Finley and Reaves.

41.    Raulston reports to Ethics Commission Executive Director Tom Albritton. Albritton, aware of Butler's relationship to Reaves and the Police Department, also failed to stop him from investigating Reaves and Finley.

42.    The policies for processing Ethics Commission complaints were ignored by Butler, General Counsel Raulston, and Executive Director Albritton. Butler and Raulston personally investigated Finley and Reaves.

43.    Reed and the City of Montgomery conspired with Butler and Raulston to unjustly investigate Finley and Reaves because of their race and in order to defame them personally and professionally.

44.    Butler and Raulston then set out on a premeditated course of action to

---

[1] *See Byron Butler v. Damon Dunn and Lagunita Franchise Operations, LLC*, Case No. 2:19-cv-530-ALB (M.D. Ala. 2019).

[2] *See* Fiscus, Kirsten, *Dunkin' Donuts Owner Accuses Ethics Commission Investigator of Abuse of Power*, MONTGOMERY ADVERTISER (May 31, 2019), https://www.montgomeryadvertiser.com/story/news/2019/05/31/dunkin-donuts-store-owner-alleges-abuse-power-alabama-ethics-investigator/1284376001/.

10

find that Finley and Reaves had committed ethical violations, regardless of the evidence available to them to the contrary.

45. In May 2021, Butler advised Finley and Reaves that he was investigating each of them. Butler informed Finley that he was accused of allowing police officers an extra practice round at the shooting range while officers were qualifying. Butler told Reaves the same. Butler and Raulston then proceeded with their investigation.

46. In June 2021, three weeks after Butler notified Finley in writing that he was investigating him for ethical violations on the shooting range, Reed confronted Finley about the allegations. Reed told Finley that, if he did not resign, Reed would take other action to end Finley's employment as Chief of Police.

47. Finley had no desire to leave his employment and had done nothing to justify being removed from his position, but Reed told him he would be removed regardless and that "it could be easy or difficult." Reed presented Finley with a typed resignation letter which Reed had prepared for Finley to sign.

48. Finley considered Reed's comments and actions to be threatening and believed he had no choice but to sign the resignation document that Reed had prepared for his signature.

11

49.     Meanwhile, Butler and Raulston continued in their effort to tarnish the reputations of Finley and Reaves and to remove them from their positions.   In furtherance of this effort, Butler and Raulston engaged in the following actions:

a.      They falsified a Form 28 employee counseling document by deleting information contained thereon and then representing to witnesses that the Form 28 employee counseling form had been placed in an officer's personnel file for failing to meet the alleged standing firearm policy, Policy 2.311. Butler and Raulston's statement to witnesses, that an employee had been disciplined and the Form 28 placed in his file, was untrue and intentionally fabricated to disparage Finley and Reaves.

b.      They used the same falsified form and untrue statements of employee discipline to mislead witnesses so as to convince them to provide untrue and misleading testimony based on Butler and Raulston's false representations.

c.      They used the falsified document and representations of employee discipline to create false testimony that both Reaves and another officer failed performance  at the shooting range, but that Reaves was not disciplined while the other officer was.

d.      Relying on a rescinded police department policy, 2.311, they argued that Finley and Reaves had intentionally violated the policy in order to avoid disciplinary action. Butler and Raulston both knew that the policy upon which they

were relying had been rescinded in June 2018, prior to the October 2020 handgun qualification event at issue. They also were aware of the current policy, 3.2.4, effective as of April 21, 2021, which specifically noted that the prior policy had been rescinded.  Butler and Raulston falsely represented before the Commission that 2.311 had been included with an email sent to all officers on September 9, 2020 announcing the 2020 Handgun Qualifications.

e.      During media interviews and before the Ethics Commission, Butler and Raulston insisted that Policy 2.311 was in effect and had been included as an attachment to an email sent to all officers when, in fact, it was never an attachment to any such email. Through these actions Butler and Raulston manipulated evidence to create the false and manufactured testimony that Finley and Reaves had engaged in unethical conduct.

50.    Butler and Raulston requested and obtained the complete personnel files on Finley and Reaves from the City of Montgomery and then, through interrogation of other officers of the Montgomery Police Department, created the impression that Finley and Reaves had engaged in criminal activity and misused their positions.

51.    On August 4, 2021, Butler and Raulston presented the false, perjured, and manufactured evidence to the Ethics Commission. Butler and Raulston intentionally ignored, and withheld from the Ethics Commission, exculpatory

13

evidence of which they were award. Upon information and belief, Albritton, as Executive Director of the Ethics Commission, was aware of the evidence that was being presented to the Ethics Commission and the evidence which was being withheld.

52. No member of the Ethics Commission questioned the evidence presented by Butler and Raulston nor did they ask about any exculpatory evidence. The Ethics Commission did not provide Finley or Reaves an opportunity to speak to the evidence presented against them or to offer their own evidence.

53. Based upon the false evidence presented to it, the Ethics Commission found that Finley and Reaves had each committed a "minor violation" of the Ethics Act.

54. Without waiting for the Ethics Commission to issue its formal findings, Reed immediately issued a press release reporting the vote of the Ethics Commission. This press release was circulated to the media, including social media. Reed issued this press release so as to disparage Finley and Reaves and to damage their personal and professional reputations.

55. On August 12, 2021, the Ethics Commission issued its findings. Reed then publicly and immediately demoted Reaves from Deputy Chief of Operations to Major with her duty station at the jail, and removed her monetary stipend.

14

56.     On September 1, 2021, the Reed and the City of Montgomery issued another press release which included an article entitled "Interim Montgomery police chief: Department morale is 'coming back around.'" Finley's and Reaves' images and names were published, alleging again that they had committed a "minor violation" of the Ethics Act.

57.     The press release and article portrayed Finley and Reaves in a negative and disparaging light in order to sway public opinion against them despite their years of dedicated public service as police officers.

THE ATTORNEY GENERAL'S REVIEW OF THE INVESTIGATION.

58.     In November 2021, after its review of the Ethics Commission findings, the Alabama Attorney General exonerated both Finley and Reaves of all wrongdoing.

59.     The Attorney General's independent investigation found that Raulston and Butler, with the assistance of Reed, the City of Montgomery and its agents, had engaged in unethical and illegal acts to present false and fabricated evidence against Finley and Reaves to the Ethics Commission.

60.     The Attorney General found that Raulston and Butler withheld critical evidence that would have completely exonerated Finley and Reaves.

61.     The Attorney General also found that Reed and the City of Montgomery conspired with Raulston and Butler to fabricate evidence to intentionally produce a

15

contrived violation of the ethics rules to justify publicly excoriating Finley and Reaves.

62. Pursuant to his authority under the Code of Alabama (1975) § 36-25-27(b), the Attorney General rejected the Ethic Commission's proposed administrative resolutions pertaining to Finley and Reaves. The Attorney General expressed concern that the Ethics Commission had violated the Brady Rule[3] in its handling of the case by not turning over exculpatory materials or impeachment evidence to Finley and Reaves.

63. Specifically, the Attorney General's findings include the following:

a. That Raulston and Butler employed false evidence in interviews with witnesses and submitted that false evidence to the Ethics Commission.

b. That the investigative reports presented to the Ethics Commission by Butler and Raulston contained a material misrepresentation of fact, and the witness testimony included in the investigative reports was edited to conceal the misrepresentation of material fact from the Ethics Commission and was embellished further during the hearing before the Ethics Commission.

c. That Raulston, as General Counsel, and Butler violated Finley's and Reaves' due process rights by failing to provide discovery as required by state

---

[3] The Brady Rule, named for *Brady v. Maryland*, 373 U.S. 83 (1963), requires, as a matter of due process, the disclosure of material evidence favorable to the accused that is in the government's possession.

16

law and through the suppression of exculpatory evidence.

d.      That Raulston willingly went along with Butler's decision to reach a pre-determined outcome regardless of the facts.

e.      That, ultimately, the available evidence – both that in the possession of the Commission and that which the Commission's staff did not gather – establishes that neither Finley nor Reaves committed any violation of Alabama's ethics laws.

f.      That, ultimately, Butler and Raulston manipulated their own witnesses into giving incorrect testimony that made them susceptible to highly effective cross-examination in a future legal proceeding in this matter.

g.      That each time Butler and Raulston manipulated the evidence in order to get a witness to make a false representation, they were contributing to, and exacerbating, the erosion of credibility of their own witnesses and setting sworn law-enforcement officers up for a withering cross-examination and impeachment at any criminal trial.

h.      That under state law and existing Montgomery Police Department policies, the Commission's theory of guilt penalized Finley and Reaves for protected communication and conduct under said existing policies.

i.      That Raulston's decision to mischaracterize witness testimony to the Ethics Commission constituted professional misconduct and deprived the Finley

17

and Reaves of due process of law.

j.   That the investigative reports and the Ethics Commission's recommendation punished Reaves for exercising communication rights specifically granted to her under the policies and procedures of the Montgomery Police Department.

k.   That Butler sought Finley's resignation while suppressing exculpatory evidence of which he was aware.

64.   The Attorney General's findings also included the following facts:

a.   That Butler and Raulston's investigative reports alleged that Reaves used public property or equipment to obtain a "private benefit" by using ammunition purchased by MPD and the firing range owned by the MPD to permit Reaves to qualify in order to avoid taking the disciplinary action required by agency policy. Butler and Raulston concluded that a 3-day suspension and 6-month loss of "take-home vehicle privileges" "should have been enforced by Respondent Finley pursuant to Policy 2.311.

b.   That at the time Butler and Raulston submitted their investigative reports to the Ethics Commission, they both possessed personal knowledge that MPD Policy 2.311, effective 9.11.2012, had been rescinded by Written Directive 3.2.4 (Annual-Biennial Proficiency Training), effective 6.25.18. No later than April 18, 2021, Butler possessed personal knowledge that Policy 2.311 had been

rescinded. Raulston obtained personal knowledge of this fact no later than May 11, 2021. The fact that Policy 2.311 had been rescinded by MPD Written Directive 3.2.4 is not mentioned in Butler and Raulston's investigative reports.

c.     That, additionally, Butler specifically requested, and received, PowerDMS logs maintained by the Montgomery Police Department reflecting when MPD's employees viewed and acknowledged reading MPD Written Directive 3.2.4. Not only did these logs show that MPD Written Directive 3.2.4 was implemented by MPD, but they also further identified when MPD's officers reviewed and signed those policies. The fact that Written Directive 3.2.4, which rescinded Policy 2.311, had been reviewed by the individual who had brought the complainant to the Ethics Commission, as well as the witnesses who provided testimony, both at the time of its adoption in 2018 and when amended in January 2020, should have given Butler and Raulston great concern as the interviews progressed.

d.     The fact that the complainant before the Ethics Commission alleged the applicability of a rescinded policy, the invalidity of which he should have known, was exculpatory because it went to the very core of the Ethics Commission's investigative efforts. The Ethics Commission staff should have informed Finley and Reaves that grounds existed from which it might be inferred that the complainant was attempting to improperly influence an ethics investigation. This failure to disclose was aggravated by Butler's defense of the complainant during the

19

Commission proceeding, when the complainant's motivations were questioned.

65. None of the Defendants have acknowledged the fabricated evidence, the false investigation, the malfeasance of the Ethics Commission, nor the wrongdoing of its own officers in creating false evidence against Finley and Reaves, nor have they taken any steps to clear their names and restore their reputations.

66. None of the Defendants have issued a press or media release stating that Finley and Reaves had been cleared of any violation of the Ethics Act.

67. The Defendants have remained silent, refusing to rectify the professional and reputational harm they caused Finley and Reaves; they have not taken any action to reinstate Finley and Reaves to their former and proper positions.

68. Because of the humiliation and indignities suffered by Finley and Reaves, both are hesitant to go into public places in and around the County of their residence. They have both suffered great embarrassment and humiliation and continue to suffer such embarrassment and humiliation because of the activities of the Defendants as herein described.

69. Finley and Reaves have suffered, and continue to suffer, physical and mental pain and emotional distress from the injuries described herein. They will continue in the future to suffer mental pain and emotional distress from said injuries caused by Defendants.

20

70.  As a proximate result of Defendants' conduct, Finley and Reaves' physical injuries and mental and emotional pain and suffering caused by Defendants have adversely affected their home and family life, impaired and hindered them in the performance of their accustomed daily activities, and greatly restricted their ability to engage in activities to which they are otherwise accustomed, such as visiting public places.

71.  On November 28, 2022, the State of Alabama filed a Complaint for Declaratory Judgment in the Circuit Court of Montgomery County, Alabama, against the Ethics Commission for its illicit actions taken against Finley and Reaves, the subject of the instant Complaint. (*See State of Alabama v. Alabama Ethics Commission, et al.,* 03-CV-2022-901464.00).

## COUNT I
## 42 U.S.C. § 1983
## EQUAL PROTECTION CLAUSE VIOLATIONS
## AGAINST REED, BUTLER AND RAULSTON.

72.  Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set forth herein.

73.  The Fourteenth Amendment to the United States Constitution prohibits any state from making or enforcing any laws which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

21

74.    The Fourteenth Amendment to the United States Constitution also protects persons from race discrimination by the government and government officials.

75.    Defendant Butler is a Black male citizen of the United States.

76.    Defendant Butler previously worked for the Montgomery Police Department and is a personal friend of several of the police officers, also Black men, who Plaintiffs investigated in 2020 and 2021.

77.    Defendants Reed and Butler harbored race-based invidious discriminatory animus against both Finley and Reaves because they had investigated Black police officers and they acted on that animus.

78.    Defendant Butler fabricated evidence and brought false ethical complaints against Plaintiff Finley because Butler believed Finley, a Black man, was "disloyal" to the Black police officers he sought to discipline.

79.    Defendant Reed similarly brought false complaints against Finley because he believed Finley, a Black man, was "disloyal" to the Black police officers he sought to discipline.

80.    Defendant Butler fabricated evidence and brought false ethical complaints against Plaintiff Reaves, a White woman, because he believed that, because of her race, she should not have been promoted by Finley.

22

81.    Defendant Butler's use of fabricated evidence and investigating false ethical complaints was humiliating and degrading to Plaintiffs, and interfered with Plaintiffs' ability to perform their duties as members of the City of Montgomery Police Department command staff by causing strife and undermining their roles within the Department.

82.    When Plaintiff Finley did not exhibit "racial loyalty" to Defendant Butler and the Montgomery police officers he sought to discipline, Defendants Butler, Reed and Raulston took actions to frustrate Plaintiff Finley's ability to act effectively as Chief of Police.

83.    When Plaintiff Reaves, a White woman, sought to discipline Black police officers who were friends of Defendant Butler, Defendant Butler, Reed and Raulston took actions to frustrate Plaintiff Reaves' ability to act effectively as Deputy Chief of Operations.

84.    The actions of Defendants Butler, Reed and Raulston against Plaintiffs were motivated by invidious racial animus.

85.    Defendants Reed, Butler, and Raulston used the power of the positions granted to them by the State of Alabama to violate the constitutional rights of Finley and Reaves to the equal protection of the law and due process.

86.    Defendants Butler, Reed and Raulston, acting under the color of state law, deprived Plaintiffs of their right to be free from race discrimination as guaranteed by the Equal Protection Clause of the United States Constitution.

87.    This deprivation of Plaintiffs' equal protection rights caused them harm and injury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against Defendants Butler, Reed and Raulston in their individual capacities pursuant to 42 U.S.C. § 1983 for:

a. Compensatory damages to be determined by the trier of fact;

b. Punitive damages to be determined by the trier of fact;

c. Injunctive relief, including, but not limited to, reinstating Chief Finley and Deputy Chief Reaves;

d. Declaratory relief;

e. That relief which is fair, just, and equitable; and

f. Costs, including reasonable attorney's fees.

## COUNT II
## 42 U.S.C. § 1983
## EQUAL PROTECTION CLAUSE VIOLATION
## AGAINST DEFENDANTS ALABAMA ETHICS COMMISSION, BEVERLYE BRADY, JOHN PLUNK, LYN STUART, STANTON H. MCDONALD, BRIG. GEN. (R) EDWARD F. CROWELL, STANTON H. ALBRITTON, CYNTHIA RAULSTON AND BYRON BUTLER.

88.     Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

89.     The Fourteenth Amendment to the United States Constitution prohibits any state from making or enforcing any laws which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

90.     The Fourteenth Amendment to the United States Constitution protects individuals from race discrimination by any State or State government officials.

91.     Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton do not have any policies and/or procedures in place to protect those individuals it is charged with investigating from unconstitutional or racially discriminatory conduct by its investigators and general counsel.

92.     Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton have a policy

25

and/or custom of permitting its investigators and general counsel to treat those individuals it is charged with investigating in any way the investigators and general counsel see fit without any check on their conduct or mechanism for accountability.

93.    As a result of said policies and/or customs of not providing any policies, checks, oversight, and/or mechanisms for accountability on the conduct of its investigators and general counsel, Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton have permitted its agents to engage in unconstitutional and racially discriminatory conduct.

94.    Defendants Butler and Raulston conspired to bring false charges and fabricated evidence against Plaintiffs that was racially motivated.

95.    Defendants Butler and Raulston conspired to bring false charges and fabricated evidence against Plaintiffs which was not only humiliating and degrading but also served to interfere with Plaintiffs' ability to perform their duties as members of the City of Montgomery Police Department command staff by causing strife and undermining their effectiveness.

96.    When Plaintiff Finley did not exhibit "racial loyalty" to Defendant Butler and the Black Montgomery police officers he sought to discipline, Defendant Butler took actions to frustrate Plaintiff Finley's ability to act effectively as Chief of Police.

26

97.    When Plaintiff Reaves, a White woman, sought to discipline Black police officers who were friends of Defendant Butler, Defendant Butler took actions to frustrate Plaintiff Reaves' ability to act effectively as Deputy Chief of Operations.

98.    Defendant Butler's actions against Plaintiffs were racially motivated.

99.    Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton, by not providing any policies, checks, oversight, and/or mechanisms for accountability on the conduct of its agents caused Plaintiffs to face prosecutions before the Ethics Commission because of their race and deprived the Plaintiffs of the rights to due process and equal protection guaranteed by the Fourteenth Amendment.

100.    The conduct of Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton's deprived Plaintiffs of their equal protection and due process rights and caused them harm and injury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against Defendants Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, its Executive Director Albritton, and Burton and Raulston pursuant to 42 U.S.C. § 1983 for:

a.    Compensatory damages to be determined by the trier of fact;

27

b. Injunctive relief, including, but not limited to, reinstating Chief Finley and Deputy Chief Reaves;

c. Declaratory relief;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

**COUNT III**
**42 U.S.C. § 1983**
**VIOLATION OF CIVIL RIGHTS BY**
**DEPRIVATION OF RIGHTS PROVIDED BY**
**THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH**
**AMENDMENTS TO THE UNITED STATES CONSTITUTION**
**AGAINST ALL DEFENDANTS**

101. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

102. On or about April 6, 2021, Defendant City of Montgomery, its agents, employees, and Defendant Reed caused false complaints to be made against Plaintiffs before the Montgomery City Council.

103. Reed told Plaintiffs that neither they nor anyone representing them could speak in their defense.

104. The City of Montgomery, its agents, employees, and Reed then forwarded the knowingly false complaints against Plaintiffs to Defendants Alabama

28

Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, its Executive Director Albritton, Butler, and Raulston.

105. Defendant Butler previously worked for the Montgomery Police Department and is a personal friend of several police officers who Plaintiffs sought to discipline in 2020 and 2021.

106. Defendant Butler was previously supervised by Plaintiff Reaves and should have been conflicted from investigating Plaintiffs Reaves and/or Finley by the Ethics Commission.

107. The City of Montgomery and Reed conspired with Defendants Butler and Raulston to bring and investigate false and manufactured ethical complaints against Plaintiffs.

108. In June 2021, three weeks after Defendant Butler notified Plaintiff Finley in writing of the ethical complaints against him, the Reed, acting on behalf of the City of Montgomery, forced Plaintiff Finley to resign his employment with the City.

109. On August 4, 2021, based on false and fabricated evidence created by the City of Montgomery, Reed, and Defendants Butler and Raulston, and with the knowledge and approval of Albritton, Defendant Alabama Ethics Commission and its members Brady, Plunk, Stuart, McDonald, and Crowell, found that Plaintiffs had each committed a "minor violation" of the Alabama Ethics Act.

29

110.   Plaintiffs were denied their constitutional right of due process during the process which resulting in the findings of the Alabama Ethics Commission.

111.   Lack of due process is unconstitutional and in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs have suffered the damages as hereinabove alleged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

    a.   Compensatory damages to be determined by the trier of fact;

    b.   Injunctive relief, including, but not limited to, reinstating Chief Finley and Deputy Chief Reaves;

    c.   Declaratory relief;

    d.   That relief which is fair, just, and equitable; and

    e.   Costs, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER**
**THE FOURTEENTH AMENDMENT AND FIFTH AMENDMENT**
**AGAINST ALL DEFENDANTS**

112.   Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set forth herein.

113.   Plaintiffs each had property rights in their positions with the

30

Montgomery Police Department and the accompanying benefits of said positions.

114. The Fifth Amendment to the United States Constitution guarantees Plaintiffs the right not to be deprived of property without due process of law.

115. The Fourteenth Amendment to the United States Constitution extends the rights found in the Fifth Amendment to apply to the states and their actors.

116. Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiffs had the right not to have their property taken without due process.

117. Defendants brought false complaints and charges against Plaintiffs and conducted an investigation of Plaintiffs in a manner which deprived the Plaintiffs of due process and deprived them of their property interests in their jobs with the Montgomery Police Department. Defendants pursued this course of conduct malice towards Plaintiffs and with a motive to deprive Plaintiffs of their employment with the City of Montgomery Police Department.

118. Defendants conduct deprived Plaintiffs of their property in violation of their property rights as secured by the Fifth and Fourteenth Amendments.

119. Plaintiffs' property has not been restored. Said property includes Plaintiff Finley's position as Chief of Police of the Montgomery Police Department with accompanying benefits and Plaintiff Reaves' position as Deputy Chief of Operations of the Montgomery Police Department with accompanying benefits.

31

120. Any post-deprivation remedies available to Plaintiffs to address Defendants' taking of their property is inadequate.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

a. Compensatory damages to be determined by the trier of fact;

b. Injunctive relief, including, but not limited to, reinstating Chief Finley and Deputy Chief Reaves;

c. Declaratory relief;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

**COUNT V**
**42 U.S.C. § 1985**
**CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS**
**AGAINST ALL DEFENDANTS**

121. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

122. Plaintiffs allege that Defendants conspired to violate their civil rights in violation of 42 U.S.C. § 1985. In taking the above-described actions, Defendants Reed, the City of Montgomery, the Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, its Executive Director Albritton,

32

Butler, and Raulston intentionally and willfully conspired to deprive Plaintiffs of their constitutionally-protected rights to due process and equal treatment under the Fourteenth Amendment.

123. Defendants' conduct was driven by a race-based invidious discriminatory animus against Plaintiffs. Defendants believed that Reaves should not have been selected as Deputy because of her race. Defendants also believed that Finley, as a Black male, should not have investigated, nor permitted Reaves to investigate, the Black officers for fraud and theft.

124. As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered and will continue to suffer damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

125. Defendants each committed acts to further the conspiracy, as detailed in paragraphs 1 – 70 above.

126. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

33

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1985 for:

a. Compensatory damages to be determined by the trier of fact;

b. Injunctive relief, including, but not limited to, reinstating Chief Finley and Deputy Chief Reaves;

c. Declaratory relief;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

## COUNT VI
## CIVIL CONSPIRACY UNDER ALABAMA LAW
## AGAINST DEFENDANTS REED, THE CITY OF MONTGOMERY, BUTLER AND RAULSTON.

127. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

128. A civil conspiracy under Alabama law requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

129. Plaintiffs' claim of civil conspiracy is brought against Defendants Butler and Raulston in their individual capacities.

130. Plaintiffs Finley, as Chief of Police, and Reaves, as Deputy Chief of

34

Operations, held a property interest in their positions with the Montgomery Police Department. Defendants conspired to illegally deprive them of that property interest by engaging in the violation of their rights under the Fourteenth Amendment to the U.S. Constitution.

131. Defendants conspired to deprive Plaintiffs of their federally-protected rights to due process and equal protection.

132. Defendants conspired to deprive Plaintiffs of their civil rights.

133. Defendants conspired to damage Plaintiffs' reputation and name by bringing and investigating false ethical complaints against Plaintiffs and, based on this fraudulent investigation, issuing a finding that Plaintiffs had each committed a "minor violation" of the Alabama Ethics Act.

134. Defendants conspired to damage Plaintiffs by having them removed from their visible and prestigious positions as a result of the fabricated investigation and fraudulent findings, which diminished their standing and reputation in the community, and by limiting their income to inadequate or nonexistent amounts.

135. Defendants conspired among themselves and each Defendant committed acts to further the conspiracy.

136. The Attorney General's independent investigation found that Defendants Raulston and Butler, with the assistance of the City of Montgomery and

35

its agents, had engaged in unethical and illegal acts to present false and fabricated evidence regarding Plaintiffs to the Alabama Ethics Commission.

137. The Attorney General found that Defendants Raulston and Butler withheld critical evidence that would have completely exonerated Plaintiffs.

138. The Attorney General found that Defendants Raulston and Butler conspired with the City of Montgomery and Reed to create evidence to intentionally fabricate a contrived violation of the ethics rules to justify publicly excoriating Plaintiffs.

139. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, damages for loss of career opportunity, damages for embarrassment, humiliation, and mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT VII
### NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION AGAINST DEFENDANT ALABAMA ETHICS COMMISSION, ITS MEMBERS BRADY, PLUNK, STUART, MCDONALD AND CROWELL, AND ITS EXECUTIVE DIRECTOR ALBRITTON.

140. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

141.   This is a claim against Defendant Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton, arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, retention, and supervision of the Alabama Ethics Commission's employees, Defendants Butler and Raulston.

142.   Defendant Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton, owed a duty of care to the Plaintiffs, citizens of the State of Alabama, in the hiring, training, retention, and supervision of its investigators and general counsel to ensure that the actions of its agents did not harm citizens.

143.   The agents of Defendant Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton, violated Plaintiffs' constitutional due process rights. Defendant's actions were also tortious.

144.   Defendant Alabama Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, and its Executive Director Albritton, were aware of the acts of its agents, Defendants Butler and Raulston, and failed to train, discipline, or terminate said Defendants, thereby failing to protect Plaintiffs from further injury and to correct the wrongful actions of its agents.

145.   Defendant Alabama Ethics Commission, its members Brady, Plunk,

Stuart, McDonald and Crowell, and its Executive Director Albritton, were negligent and/or wanton in the hiring, training, retention, and supervision of its agents.

146. As approximate result of Defendants' negligent conduct, Plaintiffs suffered adverse terms and conditions of employment, financial loss, physical injury, pain and suffering, emotional distress, humiliation, mental anguish, trauma, embarrassment, loss of reputation, and loss of career opportunity.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, damages for loss of career opportunity, damages for embarrassment, humiliation, and mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT VIII
## INVASION OF PRIVACY
## AGAINST ALL DEFENDANTS

147. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

148. This is a claim against all Defendants for invasion of Plaintiffs' right to privacy based on the laws of the State of Alabama.

149. Defendants took actions seeking to invade the privacy of Plaintiffs by conspiring to bring false charges and fabricated evidence against them and giving publicity to private information about Plaintiffs that violated ordinary decency and

38

putting Plaintiffs in a false, but not necessarily defamatory, position in the public eye and intruding into Plaintiffs' physical solitude and seclusion.

150.   Defendants' intrusion into the private activities of Plaintiffs during their investigation based on false evidence and fabricated complaints caused them shame, embarrassment, humiliation, and worry because it created the perception and inference that Plaintiffs had engaged in ethical and moral wrongdoing or engaged in illegal acts.

151.   Defendants' intrusion into the private affairs and concerns of Plaintiffs based on false evidence and fabricated complaints was offensive and objectionable to Plaintiffs.

152.   Defendants invaded Plaintiffs' personal and emotional sanctum by harassing and retaliating against them.

153.   Defendants intruded into Plaintiffs' physical solitude and seclusion by requiring them to defend their employment history during Defendants' investigation based on false charges and fabricated evidence.

154.   Defendants placed Plaintiffs in a false light with their peers, employees, business contacts, and in the public they had long served as sworn law officers of the State of Alabama.

155.   Defendants informed Plaintiffs' peers, employees, and business contacts that they had been found guilty of ethics violations. Defendants publicized

39

this information and allowed others they conspired with to appropriate private and false information and disseminate it in the public eye, including through media releases.

156. Defendants' false portrayal of Plaintiffs and the circumstances surrounding their investigation damaged Plaintiffs' relationships and their ability to seek comparable employment in their career of choice.

157. Defendants' conduct proximately caused Plaintiffs to suffer embarrassment, humiliation, shame, physical injury, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which they claim damages as set out below.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT IX
## MALICIOUS PROSECUTION
## AGAINST ALL DEFENDANTS

158. Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

159. This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting malicious prosecution.

160. Defendants Reed, the City of Montgomery, the Alabama Ethics

Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, its Executive Director Albritton, Raulston, and Butler directed, encouraged, and/or influenced the investigation of Plaintiffs.

161. The complaints brought against Plaintiffs were without merit.

162. The complaints brought against Plaintiffs were fraudulent.

163. The complaints brought against Plaintiffs were pursued by Defendants knowing that they allegations were baseless and Defendants conspired to fabricate evidence to ensure Plaintiffs were found to have committed an ethics violation.

164. The investigation was brought against Plaintiffs and pursued with malice and a motive to eliminate Plaintiffs from the City of Montgomery Police Department.

165. The investigation was brought against Plaintiffs and pursued with malice and a motive to intentionally harm Plaintiffs and their families physically, financially, reputationally, and emotionally.

166. The complaints brought against Plaintiffs were pursued by Defendants even after Defendants had evidence and testimony that Plaintiffs had not violated any rules, ethics laws or statutory provisions of the State of Alabama, or policies of the City of Montgomery.

167. The complaints brought against Plaintiffs were eventually dismissed by the Office of the Attorney General of the State of Alabama.

WHEREFORE, Plaintiffs demand judgment in such an amount of compensatory and punitive damages as a jury deems reasonable and may award plus attorneys' fees and costs.

## COUNT X
## DEFAMATION, LIBEL, AND SLANDER
## AGAINST ALL DEFENDANTS

168.  Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

169.  This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting defamation, libel, and slander.

170.  Reed, the City of Montgomery, the Ethics Commission, its members Brady, Plunk, Stuart, McDonald and Crowell, its Executive Director Albritton, Butler, and Raulston directed, encouraged, and/or influenced the false complaints, charges, and investigation of Plaintiffs.

171.  Defendants falsely accused Plaintiffs of unlawful conduct and falsified documents, misled witnesses with false documents, and knowingly and maliciously fabricated facts and testimony to damage Plaintiffs. Defendants falsely, maliciously, and intentionally made defamatory and slanderous statements about Plaintiffs before, during and after their fraudulent investigation.

172.  In the alternative, Defendants were negligent and wanton in bringing false and fabricated charges against Plaintiffs and by making defamatory and

42

slanderous statements about Plaintiffs before, during and after their fraudulent investigation.

173. These false and defamatory statements published by Defendants were *slander per se* and *slander per quod*. Defendants knew that their statements, that Plaintiffs had each committed ethics violations, were false, defamatory, and malicious when made.

174. Defendants' statements about Plaintiffs were made to ridicule, shame, and disgrace Plaintiffs. Specifically, Plaintiffs were disgraced within the City of Montgomery, the Montgomery Police Department, and in the community.

175. Defendants' statements about Plaintiffs, the fabricated investigation, the falsified documents and testimony, and the deliberately misleading representations to witnesses and commissioners directly caused injury to Plaintiffs and their families.

176. Defendants' conduct against Plaintiffs was pursued with malice and a motive to intentionally harm Plaintiffs and their families physically, financially, reputationally, and emotionally.

177. Defendants' conduct proximately caused Plaintiffs and their families to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of

compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT XI
## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

178.  Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

179.  This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

180.  Defendants knew or should have known that bringing false charges, fabricating evidence, and conducting a fraudulent investigation against Plaintiffs would inflict emotional distress upon Plaintiffs.

181.  Defendants' adverse treatment of Plaintiffs, in particular subjecting them to severe, degrading, and humiliating harassment and ridicule, was outrageous, extreme, beyond the bounds of decency, and shocks the conscience.

182.  Defendants' repeated discriminatory treatment of Plaintiffs damaged their reputations and harmed their ability to seek other employment.

183.  Defendants' conduct was malicious, intentional, willful, and employed to inflict severe emotional distress, embarrassment, physical trauma, and ridicule upon Plaintiffs.

184.  Defendants' conduct was extreme and outrageous and has caused

Plaintiffs severe distress. Because of Defendants' conduct, Plaintiffs have suffered monetary damages, embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages.

185.   Defendants' conduct constitutes the tort of outrage.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT XII
## INTERFERENCE WITH
## CONTRACTUAL OR BUSINESS RELATIONS
## AGAINST ALL DEFENDANTS

186.   Plaintiffs incorporate by reference paragraphs 1-71 of this Complaint as if fully set out herein.

187.   Plaintiffs had established business relationships with their coworkers and business contacts within the Montgomery Police Department, the City of Montgomery, and the Montgomery County community.

188.   Defendants had knowledge of these business relationships and sought to intentionally damage these relationships to Plaintiffs' financial, physical, and emotional detriment.

189.   After conspiring among themselves and after bringing fraudulent complaints and fabricating evidence against Plaintiffs, Defendants informed Plaintiffs' peers, subordinates, and business contacts, as well as the community at

large, that Plaintiffs had each committed an ethics violation.

190. Defendants portrayed Plaintiffs as dishonest and unethical police officers. Defendants published this information to keep others from employing Plaintiffs in their careers of choice.

191. Defendants' false portrayal of Plaintiffs' employment and the circumstances surrounding the fraudulent ethics complaint damaged Plaintiffs' relationships and their ability to seek comparable employment and employment in their career choice. Plaintiffs were damaged as a result of Defendants' intentional interference.

192. As a proximate result of Defendants' conduct, Plaintiffs were caused to suffer loss of employment, loss of wages and benefits, physical injury, pain and suffering, embarrassment, humiliation, loss of reputation, loss of career opportunity, emotional distress, trauma, and mental anguish for which they claim damages.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

_____
Alicia K. Haynes (ASB-8327-E23A)
Attorney for Plaintiffs

46

OF COUNSEL:

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
Email: akhaynes@haynes-haynes.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL**

Steven L. Reed
103 North Perry St.
Montgomery, AL 36104

The City of Montgomery
103 North Perry St.
Montgomery, AL 36104

John Plunk
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

Lyn Stuart
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

Beverlye Brady
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

Stanton H. McDonald
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

47

Brig. Gen. (R) Edward F. Crowell
844 Timberlane Road
Pike Road, AL 36064

Thomas Albritton
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

Alabama Ethics Commission
100 N Union Street #104
Montgomery AL, 36104

Cynthia Raulston
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104

Byron Butler
Alabama Ethics Commission
100 N Union Street #104
Montgomery, AL 36104


**PLAINTIFFS' ADDRESSES**

Jennifer M. Reaves
Ernest N. Finley, Jr.
c/o Alicia K. Haynes
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, AL 35226