**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ERNEST N. FINLEY, JR. and** | ) | |
| **JENNIFER M. REAVES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | **2:23-cv-464-KKD-PBM** |
| **THE ALABAMA ETHICS** | ) | |
| **COMMISSION;** | ) | |
| **THOMAS ALBRITTON;** | ) | |
| **CYNTHIA RAULSTON; and BYRON** | ) | |
| **BUTLER,** | ) | **PLAINTIFFS DEMAND A** |
| | ) | **TRIAL BY STRUCK JURY** |
| **Defendants.** | ) | |

**FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1.     Plaintiffs Ernest N. Finley, Jr. and Jennifer M. Reaves bring this action

to redress violations of their civil rights caused by Defendants the Alabama Ethics

Commission, Thomas Albritton, Cynthia Raulston, and Byron Butler. They bring

claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Alabama tort law.

2.     The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331

and 1343, 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper under 28 U.S.C. §1391 because the alleged unlawful conduct occurred in or around Montgomery County, Alabama.

## PARTIES

4.      Plaintiff Ernest N. Finley, Jr., was, at all times relevant to this Complaint,  an adult resident of the City of Montgomery which is in Montgomery County, Alabama.

5.      Plaintiff Jennifer M. Reaves was, at all times relevant to this Complaint, an adult resident of the City of Montgomery which is in Montgomery County, Alabama.

6.      Defendant Alabama Ethics Commission is a governmental agency pursuant to the laws of the State of Alabama. The Alabama Ethics Commission aids in enforcing the Alabama Ethics Act and its duties are governed by the Code of Alabama (1975) §§ 36-25-4 to 36-25-4.3. Its actions as a governmental entity are "state actions" within the meaning of the Fourteenth Amendment to the United States Constitution.

7.      Defendant Thomas B. Albritton was, at all times relevant to this Complaint, the Executive Director of the Alabama Ethics Commission.  He is sued in both his individual and official capacities.

8.      Defendant Cynthia Raulston is an adult resident of Montgomery County, Alabama. Suit is brought against Raulston in both her individual and official

capacities. Defendant Raulston is an attorney admitted to the Alabama State Bar. At all times pertinent to the allegations of this Complaint, Defendant Raulston was employed as General Counsel with Defendant Alabama Ethics Commission.

9. Defendant Byron Butler is an adult resident of Montgomery County, Alabama. Suit is brought against Butler in both his individual and official capacities. At all times pertinent to these allegations, Defendant Butler was employed as Senior Special Agent with Defendant Alabama Ethics Commission.

## **FACTS**

### PLAINTIFFS' SERVICE TO THE
### MONTGOMERY POLICE DEPARTMENT

10. Plaintiff Ernest N. Finley, Jr. ("Finley") is a Black male. He was hired by the City of Montgomery in 2015 to serve as Chief of Police with the Montgomery Police Department. He served in that position until June 2021. At the time of his hiring, Finley had served as a police officer for 29 years, having begun his career with the Atlanta Police Department in 1986, serving first as a patrol office and later as Deputy Chief of Field Operations.

11. Finley was responsible for supervising the entire Montgomery Police Department, which consisted at the time of approximately 200 police officers. Finley reported to Steven L. Reed, Mayor of the City of Montgomery ("Reed" or "Mayor").

12. Plaintiff Jennifer M. Reaves ("Reaves") is a White female. She was

3

employed with the Montgomery Police Department for twenty-six (26) years and was promoted to the position of Deputy Chief of Operations in July 2020.

13.   Plaintiff Finley promoted Reaves to the position of Deputy Chief of Operations.

14.   Beginning in October 2020, Finley and Reaves, in the line and scope of their official duties and responsibilities, investigated approximately 12 Montgomery police officers for violations of Montgomery Police Department policies and Alabama ethics rules. These investigations involved allegations of fraud, theft and second jobs the officers were working.

15.   The results of Finley's and Reaves' investigations were forwarded to the Investigator for the City.

16.   All 12 officers investigated by Finley and Reaves were found guilty of violations of varying degrees.  Five officers reporting to Reaves were found guilty of ethics violations.  The remaining officers reported to Deputy Chief of Staff Zedrick Dean, a Black male.  The remaining officers under Dean were either not guilty of ethics violations or the violations were considered minor.

RESENTMENT AGAINST PLAINTIFFS IN<br>THE CITY AND THE POLICE DEPARTMENT.

17.   Following these investigations and the disciplining of officers, a number of officers within the Montgomery Police Department, with whom Finley

4

and Reaves worked on a daily basis, began a regimen of regular harassment, retaliation, and insubordination toward both Plaintiffs.

18.    The City of Montgomery ("City") and certain agents of the City were upset that Finley had disciplined Black police officers and had promoted Reaves, a White police officer, to Deputy Chief of Operations, and engaged in a plot and scheme to undermine the authority and credibility of the Plaintiffs and to portray them in a negative and false light in carrying out their sworn duties with the Montgomery Police Department.

19.    Police officers were encouraged to lodge false complaints about the Plaintiffs to the Montgomery City Council, City Investigations, and the Alabama Ethics Commission (the "Ethics Commission").  These efforts were motivated by race-based discriminatory animus against the Plaintiffs.

20.    On or about April 6, 2021, the Plaintiffs were notified that false complaints were lodged against them with the Montgomery City Council and the Ethics Commission. The complaints stemmed from police activities in October 2020 regarding firearm qualifications.

PROCEEDINGS BEFORE THE<br>MONTGOMERY CITY COUNCIL

21.    The complaints were initially addressed at a meeting of the Montgomery City Council.  Reed told Finley and Reaves that they would not be allowed to have anyone representing them speak in their defense at the meeting or

to defend the allegations against them.  Reed prohibited them from speaking and insisted they sit in silence during the Montgomery City Council meeting. Further, Reed encouraged police officers to speak against Finley and Reaves during this public meeting.

22.    The complaints were investigated by City Investigations in December 2020 and found to be unsubstantiated and dismissed.

PROCEEDINGS BEFORE THE ETHICS COMMISSION.

23.    The same complaints regarding the October 2020 firearm qualification activity were lodged against Finley and Reaves with the Alabama Ethics Commission and were investigated by Senior Special Agent Byron Butler ("Butler"), General Counsel Cynthia Raulston ("Raulston"), and Thomas B. Albritton ("Albritton"), Executive Director of the Ethics Commission.

24.    The Ethics Commission is authorized by statute to receive complaints and conduct investigations into violations of the Alabama Ethics Act ("the Ethics Act") and Fair Campaign Practices Act. The Ethics Commission is also authorized to issue advisory opinions that offer protection to the person "at whose request the opinion was issued," as well as to "prescribe, publish, and enforce rules" in accordance with the Alabama Administrative Procedures Act to carry out its duties under the Ethics Act. Ala. Code (1975) §§ 36-25-4(a)(9), (11).

6

25.    A respondent to an ethics complaint is given notice of the charges filed against them and an opportunity to appear before the Ethics Commission at a hearing where "the laws of due process shall apply." *Id*. at § 36-25-4(d).

26.    The Ethics Commission has promulgated administrative regulations further governing the procedures for Ethics Commission hearings, including the privileges afforded respondents. Ala. Admin. Code r. 340-X-1-.01. For example, respondents to an ethics complaint are permitted to testify in their own defense but are not allowed to confront or cross-examine witnesses testifying against them. *Id*. at 4. 340-X-1-.01(5)(a), (c). Respondents may call witnesses in their defense but may not be present while the witnesses testify and are questioned by the Ethics Commission. *Id*. at (d).

27.    If after a hearing, the Ethics Commission finds "probable cause" that a person committed a crime by violating the Ethics Act, it refers the case to the district attorney of the appropriate judicial circuit or the Attorney General for appropriate legal action.  Ala. Code (1975) § 36-25-4(i). The Ethics Commission's findings of probable cause are reported in the minutes of Ethics Commission meetings, include the name of the respondent, and are publicly viewable on the Ethics Commission's website.

28.    Byron Butler had previously worked for the Montgomery Police Department, and during his employment, Reaves supervised Butler. Butler has

remained personal friends with several police officers, including those previously disciplined by Finley and Reaves for theft and fraud.

29.    Raulston and Albritton were aware that Butler's prior affiliation with Reaves and the complaining police officers disciplined by Finley and Reaves should have conflicted him from investigating Reaves and/or Finley, but did not prohibit Butler from the investigation nor monitor his actions.

30.    Raulston and Albritton were also on notice of prior complaints that Butler  misused his position as an investigator with the Ethics Commission, had intimidated witnesses, and had threatened a local business owner asserting his position with the Commission.  Butler's intimidation tactics were the subject of a lawsuit[1] and received media and internet publicity[2], causing subsequent ethics charges to be filed against Butler that the Ethics Commission refused to investigate or discipline Butler.

31.    Mayor Reed and agents for the City of Montgomery conspired with Butler, Raulston, and Albritton to unjustly investigate Finley and Reaves because of

---

[1] *See Byron Butler v. Damon Dunn and Lagunita Franchise Operations, LLC*, Case No. 2:19-cv-530-ALB (M.D. Ala. 2019).

[2] *See* Fiscus, Kirsten, *Dunkin' Donuts Owner Accuses Ethics Commission Investigator of Abuse of Power*, MONTGOMERY ADVERTISER (May 31, 2019), https://www.montgomeryadvertiser.com/story/news/2019/05/31/dunkin-donuts-store-owner-alleges-abuse-power-alabama-ethics-investigator/1284376001/.

race-based animus to defame and discredit both Plaintiffs personally and professionally.

32.    Butler, Raulston, and Albritton set out on a premeditated course of action to generate and fabricate false evidence to substantiate a finding that Finley and Reaves had committed one or more unspecified ethical violations, regardless of the exculpatory evidence available to them to the contrary.

33.    In May 2021, Butler advised Finley and Reaves that he was investigating each of them.  Butler informed Finley that he was accused of allowing police officers an extra practice round at the shooting range while officers were qualifying. Butler told Reaves the same. Butler and Raulston then proceeded with their investigation.

34.    In June 2021, three weeks after Butler notified Finley in writing that he was investigating him for ethical violations on the shooting range, Reed confronted Finley about the allegations.  Reed told Finley that, if he did not resign, Reed would take other action to end Finley's employment as Chief of Police.

35.    Finley had no desire to leave his employment, had done nothing to justify being removed from his position, and the complaints at the shooting range had been previously investigated and dismissed by the City. Nevertheless, Reed was insistent and told Finley he would be removed regardless and that "it could be easy

or difficult." Reed presented Finley with a typed resignation letter which Reed had previously prepared for Finley to sign.

36.     Finley considered Reed's comments and actions to be threatening to him personally and professionally and believed he had no choice but to sign the Mayor's resignation document.

37.     Meanwhile, Butler and Raulston continued in their effort to tarnish the personal and professional reputations of Finley and Reaves and to ensure their removal from their positions with the City by establishing that both were guilty of violations of the Ethics Act.  In furtherance of this effort, the following actions were directed against Finley and Reaves:

a.     Butler and Raulston falsified a City of Montgomery Form 28 employee counseling document by partially deleting information contained thereon and then representing to witnesses that Butler and Raulston were interviewing that the altered form had been placed in an officer's personnel file for failing to meet the police department's standing firearm policy, Policy 2.311.

b.     Butler and Raulston knowingly made false statements to witnesses to persuade and alter witness testimony to substantiate false and intentionally fabricated evidence to disparage Finley and Reaves.

10

c.      Butler and Raulston used falsified documents and statements to mislead witnesses so as to persuade other witnesses to provide untrue and misleading sworn testimony in order to compel perjury.

d.      Butler and Raulston used falsified evidence and untrue representations of employee discipline to create false testimony that Reaves received preferential treatment when she filed to qualify during the firearm qualifications, but other officers were disciplined for failing.

e.      Butler and Raulston tricked witnesses to provide false testimony by using a rescinded police department policy to show that Finley and Reaves had intentionally violated police department policy in order to avoid disciplinary action and provide preferential treatment to Reaves and Finley's family members.

f.      Butler and Raulston knew that the policy they used to question witnesses and present to the Ethics Commission had been rescinded in June 2018, prior to the October 2020 handgun qualification event at issue.

g.      Butler and Raulston falsely represented to witnesses and the Ethics Commission that the old rescinded policy had been included with an email sent to all officers on September 9, 2020, as the 2020 Handgun Qualifications.

h.      Butler and Raulston represented to witnesses and the Commission that the rescinded policy was in effect and had been included as an attachment to an email sent to all officers prior to qualification but knew it was never

11

an attachment to any such email nor sent to the police officers. Through these actions Butler and Raulston negligently manipulated evidence to create the false testimony and statements that Finley and Reaves had violated the Ethics Act to derive a financial gain.

      i.    Butler and Raulston requested from the City the complete personnel files of Finley, Reaves, and Finley's family to peruse at their leisure, searching through prior complaints of employees to gather information that Finley and Reaves had engaged in criminal activity and misused their positions.

      j.    Butler and Raulston also requested any emails responsive to search terms they provided for one year prior and all City internal investigation records related to those case matters so as to search for any information to use against Finley and Reaves.

38.    On August 4, 2021, Butler and Raulston presented the false, perjured, and manufactured evidence of their investigation, findings, and recommendation to the Ethics Commission. Butler and Raulston withheld exculpatory evidence from Finley and Reaves to prejudice them in presenting any defense on their behalf. Albritton, as Executive Director of the Ethics Commission, was aware of the false evidence presented to the Ethics Commission and that exculpatory evidence was withheld from Finley and Reaves.

39.     Based upon the false evidence, the Ethics Commission found that Finley and Reaves had each committed one "minor violation" of the Alabama Ethics Act.

40.     The Ethics Commission moved that Reaves' case be referred for review and appropriate legal action to the District Attorney of the appropriate judicial circuit. The motion was later amended that Reaves' case be handled administratively to the Alabama Attorney General's Office.

41.     The Ethics Commission moved that Finley's case be handled administratively, and that it be referred for review and appropriate legal action to the Alabama Attorney General's Office.

42.     In the same meeting, Executive Director Albritton moved to dismiss the cases the City filed against the individual police officers that the City investigated and found guilty of using their positions with the Montgomery Police Department and City equipment for personal gain.

43.     On August 4, 2021, without waiting for the Ethics Commission to issue its formal findings or a review by Attorney General's Office, Butler and Raulston conveyed to Mayor Reed the vote of the Ethics Commission. Reed immediately issued a press release reporting the vote of the Ethics Commission regarding Finley and Reaves.  This press release was circulated to the media, including various social

media outlets. This press release was to disparage Finley and Reaves and to damage their personal and professional reputations.

44.    On August 12, 2021, the Ethics Commission issued its findings, including its minutes that are publicly available on its website. Mayor Reed and the City demoted Reaves from Deputy Chief of Operations to Major with her duty station at the jail, and removed her monetary stipend and other benefits.

45.    On September 1, 2021, Reed and the City issued another press release which included an article entitled "Interim Montgomery police chief: Department morale is 'coming back around.'" Finley's and Reaves' images and names were published, stating again that they had committed a "minor violation" of the Ethics Act.

46.    The press release and article portrayed Finley and Reaves in a negative and disparaging light in order to sway public opinion against them despite their years of dedicated public service as police officers.

## THE ATTORNEY GENERAL'S REVIEW
## OF THE INVESTIGATION.

47.    On November 18, 2021, after its statutory review of the Ethics Commission findings, the Alabama Attorney General exonerated both Finley and Reaves of all wrongdoing.

48.    The Attorney General's independent investigation found that Raulston and Butler had engaged in unethical and illegal acts to present material

14

misrepresentations of fact and demonstrably false evidence against Finley and Reaves. The investigation reports, case files, and transcript indicate that material misrepresentations of fact were made to the Ethics Commission by Butler and Raulston, and the due process rights of Finley and Reaves were violated by the Commission's staff who failed to comply with State law during their investigation. The Attorney General stated that both Finley and Reaves had suffered reputational and professional harm due to the Commission's actions in these matters and that he would be contacting the City to report his findings.

49.    On November 18, 2021, the City was provided a copy of the letter to the Ethics Commission reporting the findings that neither Finley nor Reaves engaged in any criminal conduct whatsoever.[3]

50.    Raulston and Butler withheld critical evidence that would have completely exonerated Finley and Reaves and violated their due process rights in violation of the *Brady* Rule[4] and *United States v. Giglio*, 405 U.S. 150 (1972).

51.    The City was made aware of the *Giglio* concerns regarding Butler and Raulston's investigation of Finley and Reaves on December 6, 2021.

---

[3] This information was provided to Reaves by the City in discovery responses on May 22, 2023. *Reaves v. City of Montgomery*, 22-CV-00458-ECM-KFP.

[4] The Brady Rule, named for *Brady v. Maryland*, 373 U.S. 83 (1963), requires, as a matter of due process, the disclosure of material evidence favorable to the accused that is in the government's possession.

52.     Neither Raulston, Butler, Albritton, nor the Ethics Commission have acknowledged the fabricated evidence, the false investigation, the negligence of the Ethics Commission, or its own officers creating material misrepresentations of fact and demonstrably false evidence against Finley and Reaves, nor have these Defendants taken any steps to clear Finley and Reaves' names and restore their reputations.

53.     Neither Raulston, Butler, Albritton, nor the Ethics Commission have issued a press or media statement that Finley and Reaves had been cleared of any criminal violation of the Alabama Ethics Act.

54.     Raulston, Butler, Albritton, and the Ethics Commission have remained silent, refusing to correct or rectify the professional and reputational harm they caused Finley and Reaves.

55.     Finley and Reaves have been caused to suffer public humiliation and indignities because of the City and Raulston, Butler, Albritton, and the Ethics Commission. Both are hesitant to go into public places in and around the County of their residence. Both have lost their employment. They have both suffered great embarrassment and humiliation and continue to suffer such embarrassment and humiliation because of the activities of the Defendants as herein described.

56.     As a result of Raulston, Butler, Albritton, and the Ethics Commission's actions, Reaves moved from Montgomery County to try and escape the public ridicule and humiliation.

57.     Finley and Reaves have suffered, and continue to suffer, physical and mental pain and emotional distress from the injuries described herein. They will continue in the future to suffer physical and mental pain and emotional distress from said injuries caused by Raulston, Butler, Albritton, and the Ethics Commission.

58.     As a proximate result of Raulston, Butler, Albritton, and the Ethics Commission's conduct, Finley and Reaves' physical, mental, and emotional distress and suffering have adversely affected their home and family life as well as their professional and personal relationships, impaired and hindered them in the performance of their accustomed daily activities, and greatly restricted their ability to engage in activities to which they are otherwise accustomed, such as visiting public places.

59.     On November 28, 2022, the State of Alabama filed a Complaint for Declaratory Judgment in the Circuit Court of Montgomery County, Alabama, against the Ethics Commission for its attempts, after the fact, to change whether it has to supply individuals with exculpatory evidence so as to circumvent Finley and Reaves' claims of due process violations. (*See State of Alabama v. Alabama Ethics Commission, et al.,* 03-CV-2022-901464.00).

17

## COUNT I
## 42 U.S.C. § 1983
## EQUAL PROTECTION CLAUSE VIOLATIONS
## AGAINST DEFENDANTS
## BUTLER, RAULSTON, AND ALBRITTON

60. This Count is brought against Butler, Raulston, and Albritton.

61. Plaintiffs incorporate by reference paragraphs 10, 12, 18-20, 22, 23-37, 38-46, 49-50, and 52-54 of this Complaint as if fully set out herein.

62. The Fourteenth Amendment to the United States Constitution prohibits any state from making or enforcing any laws which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

63. The Fourteenth Amendment to the United States Constitution also protects persons from race discrimination by the government and government officials.

64. Plaintiff Ernest N. Finley, Jr. ("Finley" or "Plaintiff"), a Black male over the age of 40, was hired by the City of Montgomery in 2015 to serve as the Chief of Police at the Montgomery Police Department.

65. When he was hired, Finley had a 29-year career in police work, having begun his career with the Atlanta Police Department in 1986, first as a patrol officer, then as Deputy Chief of Field Operations.

66. Finley served as Chief of Police until June 2021.

67. As Chief, Finley was responsible for supervising the entire Montgomery Police Department, which consisted at the time of approximately 200 police officers. Finley reported to Mayor Reed.

68. Jennifer M. Reaves ("Reaves") is a White female. She was employed with the Montgomery Police Department for twenty-six (26) years and was promoted to the position of Deputy Chief of Operations in July 2020.

69. Plaintiff Finley promoted Reaves to the position of Deputy Chief of Operations.

70. Beginning in October 2020, Finley and Reaves made aware of violations of Department policies by certain police officers involving off-duty employment.

71. In the line and scope of their official duties and responsibilities, Finley and Reaves conducted an investigation as requested by City Investigations on October 5, 2020. City Investigations also conducted its own investigation of these police officers.

72. As a result of investigations by the City, 12 police officers were identified as having committed policy violations involving fraud and theft and 5 police officers were identified as having committed ethical violations.

73. The results of the investigations by the Investigator for the City of

Montgomery were forwarded to Finley and the Mayor's office.

74.    Five officers reporting to Reaves were found guilty of ethics violations. All 5 officers were African-American.  The remaining officers were found guilty of minor violations and these officers reported to Reaves and Deputy Chief of Staff Zedrick Dean, a Black male.

75.    Reaves believed that the 5 officers that reported to Reaves were guilty of ethics violations that required discipline by the Department and the matters forwarded to the Ethics Commission.  Reaves discussed this with Finley and the two options were termination or suspension.

76.    A meeting was held with Finley, the Mayor, Bill Barouse from City Investigations, City Attorney Stacy Bellinger, and Judge Charles Price. The recommendation at the meeting was termination.

77.    After the meeting, Jamilla Philpaw, Chief Administrative Officer to the Mayor, called Finley at his office and told him the Mayor did not want the recommendation to be termination. She stated that "A little birdie is telling you this: This is the recommendation: the Mayor wants Option 2, not 1. He does not want to terminate so go with the lesser discipline of suspension."

78.    Finley went back to the police department and told Reaves to process the paperwork for the officers' suspension.

79.    Finley forwarded the matter to Defendant Reed for a final decision and

approval on December 11, 2020.

80. Reed, acting as Mayor, approved the departmental punishment. The officers were issued a lesser level of discipline than termination of suspension for 20 days, demotion in rank, and 1 year's suspension of off-duty employment. One officer, Ferguson, had been terminated for a chokehold incident, so because he was gone, the discipline was not issued.

81. Ferguson's previous punishment was a 20-day suspension but this was changed by the Mayor to immediate termination. An appeal by Ferguson followed.

82. Following the investigations and discipline, Finley revised the off-duty employment policy for police officers.

83. Following these investigations and the disciplining of officers, a number of officers within the Montgomery Police Department and agents of the City, with whom Finley and Reaves worked on a daily basis, began a regimen of regular harassment, retaliation, and insubordination toward Finley and Reaves.

84. Defendant Butler is a Black male citizen of the United States.

85. Defendant Butler previously worked for the Montgomery Police Department and reported to Plaintiff Reaves. Buter is a close personal friend of several of the police officers, also Black men, that Plaintiffs Finley and Reaves investigated in October 2020.

86.    In December 2020, the City had reported to the Ethics Commission the violations of six officers that had used their position for personal gain. The ethics complaints received by the Commission involved Butler's friends.

87.    Defendant Butler harbored race-based invidious discriminatory animus against both Finley and Reaves because they had investigated Black police officers and Finley had promoted Reaves, a White police officer, instead of a Black officer to the position of Deputy Chief. Butler acted on that animus.

88.    Defendant Butler encouraged his police officer friend, Marcus Webster, to file a formal ethic complaint against Finley and Reaves. Webster had previously complained to the City in October 2020 about his perception of favoritism in the handgun qualification activity after he found out he was being investigated for theft of time and Fraud. The City investigated Webster's claims and found them unsubstantiated.

89.    Buter was undeterred by the City's findings and started his own investigation in January 2021.

90.    On January 19, 2021, Butler contacted Stacy Bellenger, City Attorney, that he was conducting an investigation into case matters 2020-370, 2020-371, and 2020-381.

22

91.     On January 20, 2021, Buter wrote Bellenger a follow-up letter to their conversation and requested  list of documents he sought which included Finley and Reaves' personnel files.

92.     Defendant Butler recruited General Counsel Raulston to assist in fabricating evidence and eliciting false testimony against Plaintiff Finley because Butler believed Finley, a Black man, was "disloyal" to the Black police officers he sought to discipline and he wanted Finley gone. Butler stated he was going to "get" Finley and would have him removed from his position.

93.     Defendant Butler recruited General Counsel Raulston to assist him in investigating Finley and Reaves. Butler and Raulston fabricated evidence and false testimony against Plaintiff Reaves, a White woman, because Butler believed that, because of her race, she should not have been promoted by Finley. Butler wanted Reaves removed from her position and gone from the police department.

94.     Butler     and     Raulston's     use     of     fabricated     evidence     and misrepresentations and false testimony was humiliating and degrading to Plaintiffs, and interfered with Plaintiffs' ability to perform their duties as members of the City of Montgomery Police Department command staff by causing strife and undermining their roles within the Department with the police officers Butler sought to defend.

95.    Butler and Raulston were fully aware that there was no basis to investigate Finley and Reaves, but proceeded to unjustly investigate Finley and Reaves because of their race and with the intent to damage both of them personally and professionally. Butler and Raulston, aided by Albritton, knew that they could convince the Commission to find both Reaves and Finley guilty of ethical violations.

96.    From January to May 2021, Butler and Raulston recruited officers, including, but not limited to, Zedrick Dean, Antavione Ferguson, Marcus Webster, John Mackey, Earl Ware, Jr., and Jeremy Harrison, to file complaints, give statements, and submit false evidence against Finley and Reaves.

97.    In May 2021, Butler advised Finley that he was investigating him. Butler informed Finley that he was accused of allowing certain police officers an extra practice round at the shooting range during handgun qualifications.

98.    Butler and Raulston claimed that, in October 2020, Finley had violated police department policy 2.311 by giving Reaves additional opportunities and preferential treatment to pass her handgun qualification, but other officers were disciplined for not passing and not getting a practice round

99.    Reed, Butler and Raulston knew that the policy they contended Finley violated had been rescinded in June 2018, two-and-a-half years prior to the October 2020 handgun qualifications. Butler and Raulston misrepresented the policy and

other evidence to witnesses in order to manufacture the testimony and statements needed to "get" Finley and Reaves.

100. On August 4, 2021, Butler, Raulston, and Albritton conspired to present false charges and evidence and testimony to the Ethics Commission that was racially motivated. Butler and Raulston withheld from the Ethics Commission (and Finley and Reaves) exculpatory evidence they had in hand that would have exonerated Finley and Reaves.

101. On August 4, 2021, the Ethics Commission voted on the claims against Finley and Reaves as presented by Butler, Raulston, and Albritton. Based upon this vote, the Ethics Commission concluded that Finley and Reaves had each committed an unspecified single "minor violation" of the Alabama Ethics Act.

102. Raulston and Butler notified the City immediately and, without waiting for the Ethics Commission to issue its formal finding, the City caused a press release to be circulated to the various media outlets reporting the vote and findings of the Ethics Commission. The press release disparaged and defamed Finley and Reaves and damaged their personal and professional reputations.

103. On August 12, 2021, the Ethics Commission issued its formal findings, and on September 1, 2021, another a press release was issued, containing Finley and Reaves' photographs and names and stated that they had committed a "minor violation" of the Alabama Ethics Act.

25

104. In November 2021, the Alabama Attorney General's office fully exonerated Finley and Reaves, finding that exculpatory evidence had been withheld and that Reaves and Finley's due process rights had been violated.

105. Butler, Raulston, and Albritton took no action to cure or repair the damage caused by their actions against Finley and Reaves.

106. The actions of Butler, Raulston, and Albritton against Plaintiffs were motivated by invidious racial animus.

107. Butler, Raulston, and Albritton used the power of the positions granted to them by the State of Alabama to violate the constitutional rights of Finley and Reaves to the equal protection of the law and due process.

108. Butler, Raulston, and Albritton, acting under the color of state law, deprived Plaintiffs of their right to be free from race discrimination as guaranteed by the Equal Protection Clause of the United States Constitution.

109. This deprivation of Plaintiffs' equal protection rights caused them harm and injury.

110. As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary

26

damages.

111.   As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against Defendants Butler and Raulston in their individual capacities pursuant to 42 U.S.C. § 1983 for:

a.  Compensatory damages to be determined by the trier of fact;

b.  Declaratory relief as determined by this Court;

c.  That relief which is fair, just, and equitable; and

d.  Costs, including reasonable attorney's fees.

**COUNT II**
**42 U.S.C. § 1983**
**VIOLATION OF CIVIL RIGHTS BY**
**DEPRIVATION OF RIGHTS PROVIDED BY**
**THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH**
**AMENDMENTS TO THE UNITED STATES CONSTITUTION**
**AGAINST DEFENDANTS BUTLER, RAULSTON, ALBRITTON, AND**
**THE ALABAMA ETHICS COMMISSION**

112.   This Count is brought against Butler, Raulston, Albritton, and the Alabama Ethics Commission.

113.   Plaintiffs incorporate by reference paragraphs 10, 12, 18-20, 22, 23-37, 38-46, 49-50, and 52-54 of this Complaint as if fully set out herein.

27

114.   In or about January 2021, the Ethics Commission and Butler caused false complaints to be made against Finley and Reaves.

115.   Defendant Butler previously worked for the Montgomery Police Department and is a personal friend of several police officers who Plaintiffs sought to discipline in 2020. The discipline included reporting these officers to the Ethics Commission for using their positions and city equipment for personal gain.

116.   Defendant Butler was previously supervised by Plaintiff Reaves and should have been conflicted from conducting any investigation of Finley and Reaves. Raulston and Albritton did not prohibit Butler's investigation despite prior complaints of his misuse of his position, and instead, they actively assisted Butler.

117.   Reed conspired with Butler, Raulston, and Albritton to bring and investigate false ethical complaints against Plaintiffs.

118.   The investigation by Butler, Raulston, and Albritton used false evidence, false testimony, and material misrepresentations to present to find Finley and Reaves guilty of violations of the Alabama Ethics Act. Butler, Raulston, and Albritton suppressed exculpatory evidence and denied Finley and Reaves their due process rights.

119.   On August 4, 2021, Butler, Raulston, and Albritton presented false evidence and testimony to the Alabama Ethics Commission so it would find Finley and Reaves guilty of a "minor violation" of the Alabama Ethics Act.  This conclusion

28

was based on false and fabricated evidence created by Butler and Raulston, and presented to the Commission with the knowledge and approval of Defendant Albritton knowing that the evidence and testimony were false and fabricated. Exculpatory evidence was withheld by Butler, Raulston, and Albritton in violation of federal and state law.

120.   Plaintiffs were denied their constitutional right of due process, manipulated by Butler, Raulston, and Albritton, and sanctioned by the Ethics Commission.

121.   Lack of due process is unconstitutional and in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs have suffered the damages including their professional and personal reputations.

122.   As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

123.   As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

a. Compensatory damages to be determined by the trier of fact;

b. Injunctive relief as determined by this Court;

c. Declaratory relief as determined by this Court;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

## COUNT III
### VIOLATION OF CIVIL RIGHTS UNDER
### THE FOURTEENTH AMENDMENT AND FIFTH AMENDMENT
### AGAINST DEFENDANTS BUTLER AND RAULSTON

124. Plaintiffs incorporate by reference paragraphs 10, 12, 18-20, 22, 23-37, 38-46, 49-50, and 52-54 of this Complaint as if fully set forth herein.

125. Finley and Reaves each had property rights in their positions with the Montgomery Police Department and the accompanying benefits of said positions.

126. The Fifth Amendment to the United States Constitution guarantees Plaintiffs the right not to be deprived of property without due process of law.

127. The Fourteenth Amendment to the United States Constitution extends the rights found in the Fifth Amendment to apply to the states and their actors.

128. Pursuant to the Fifth and Fourteenth Amendments to the United States

Constitution, Plaintiffs had the right not to have their property taken without due process.

129.    Butler and Raulston brought false complaints and charges against Plaintiffs and conducted an investigation of Plaintiffs in a manner which deprived Plaintiffs of due process and deprived each of them of their property interests in their jobs with the Montgomery Police Department.   Butler and Raulston negligently pursued this course of conduct to deprive Plaintiffs of their employment with the City of Montgomery Police Department and did so by employing misrepresentations, false evidence, false reporting, fabricated evidence, and withholding exculpatory evidence.

130.    Defendants conduct deprived Plaintiffs of their property in violation of their property rights as secured by the Fifth and Fourteenth Amendments.

131.    Any post-deprivation remedies available to Plaintiffs to address Defendants' taking of their property are inadequate.

132.    As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

31

133. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

a. Compensatory damages to be determined by the trier of fact;

b. Injunctive relief as determined by this Court;

c. Declaratory relief as determined by this Court;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

## COUNT IV
## 42 U.S.C. § 1985
## CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS
## AGAINST DEFENDANTS
## BUTLER, RAULSTON, ALBRITTON, AND
## THE ALABAMA ETHICS COMMISSION

134. This Count is brought against Butler, Raulston, Albritton, and the Alabama Ethics Commission.

135. Plaintiffs incorporate by reference paragraphs 10, 12, 18-20, 22, 23-37, 38-46, 49-50, and 52-54 of this Complaint as if fully set out herein.

136. Defendants Butler, Raulston, Albritton, and the Alabama Ethics

32

Commission conspired with others to violate the Plaintiffs' civil rights in violation of 42 U.S.C. § 1985. In taking the above-described actions, the Ethics Commission, Albritton, Butler, and Raulston negligently conspired with Mayor Reed and agents of the City of Montgomery to deprive Plaintiffs of their constitutionally-protected rights to due process and equal treatment under the Fourteenth Amendment.

137.    Defendants' conduct was driven by a race-based invidious discriminatory animus against Plaintiffs.  Defendants believed that Reaves should not have been selected as Deputy because of her race, White.  Defendants also believed that Finley, as a Black male, should not have investigated, nor permitted Reaves to investigate, the Black police officers for fraud and theft.

138.    As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

139.    As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1985 for:

a. Compensatory damages to be determined by the trier of fact;

b. Injunctive relief to be determined by this Court;

c. Declaratory relief to be determined by this Court;

d. That relief which is fair, just, and equitable; and

e. Costs, including reasonable attorney's fees.

## COUNT V
## CIVIL CONSPIRACY UNDER ALABAMA LAW
## AGAINST DEFENDANTS BUTLER AND RAULSTON.

140. This Count is brought against Butler and Raulston.

141. Plaintiffs incorporate by reference paragraphs 10, 12, 18-20, 22-38, 39-46, and 49-54 of this Complaint as if fully set out herein.

142. A civil conspiracy under Alabama law requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

143. Plaintiffs' claim of civil conspiracy is brought against Defendants Butler and Raulston in their individual capacities.

144. Plaintiffs Finley, as Chief of Police, and Reaves, as Deputy Chief of Operations, held a property interest in their positions with the Montgomery Police

34

Department. Butler and Raulston conspired to illegally deprive them of that property interest by engaging in the violation of their rights under the Fourteenth Amendment to the U.S. Constitution.

145.   Butler and Raulston conspired with agents for the City, certain police officers, and members of the community to deprive Plaintiffs of their federally-protected rights to due process and equal protection.

146.   Butler and Raulston conspired to deprive Plaintiffs of their civil rights.

147.   Butler and Raulston conspired to bring and investigate false ethical complaints against Plaintiffs and, based on this fraudulent investigation, issue a finding that Plaintiffs had each committed a "minor violation" of the Alabama Ethics Act so as to damage Plaintiff's reputation and name.

148.   Butler and Raulston conspired to damage Plaintiffs by having them removed from their visible and prestigious positions as a result of the fabricated investigation and fraudulent findings, which diminished their standing and reputation in the community, which would extend to losing their positions and income to support themselves and their families.

149.   Raulston and Butler, with the assistance of others as defined above, engaged in unethical and illegal acts to present false and contrived evidence and investigative reports regarding Plaintiffs to the Alabama Ethics Commission.

150.    Raulston and Butler withheld critical and exculpatory evidence that would have completely exonerated Plaintiffs including their own illegal acts in manipulating testimony and documents.

151.    Raulston and Butler conspired with others to create evidence to intentionally fabricate a contrived violation of the ethics rules to justify publicly excoriating Plaintiffs as engaging in criminal violations of the Alabama Ethics Act.

152.    As a proximate result of Butler and Raulston's unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

153.    As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

154.    As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory damages, damages for loss of career opportunity, damages for

embarrassment, humiliation, and mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT VI
## NEGLIGENT TRAINING, RETENTION, AND SUPERVISION AGAINST DEFENDANT ALABAMA ETHICS COMMISSION AND ITS EXECUTIVE DIRECTOR ALBRITTON

155. This Count is brought against the Alabama Ethics Commission and Albritton.

156. Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and 47-59 of this Complaint as if fully set out herein.

157. This is a claim against Defendant Alabama Ethics Commission and its Executive Director Albritton, arising under the laws of the State of Alabama to redress the negligent and wanton training, retention, and supervision of Defendants Butler and Raulston.

158. Defendant Alabama Ethics Commission and Albritton owed a duty of care to the Plaintiffs, citizens of the State of Alabama, in the hiring, training, retention, and supervision of its investigators and general counsel to ensure that the actions of its agents did not harm citizens.

159. Butler and Raulston violated Plaintiffs' constitutional due process rights and engaged in illegal and unethical investigation, tactics, and schemes that defamed and invaded the privacy of Finley and Reaves.

160. Defendant Alabama Ethics Commission and Albritton were aware of the acts of its employees, Defendants Butler and Raulston, and failed to train, retain, supervise, and/or terminate Butler and Raulston, thereby failing to protect Plaintiffs from further injury and to correct the wrongful actions of Butler and Raulston.

161. Defendant Alabama Ethics Commission and Albritton were negligent and/or wanton in the training, retention, and supervision of Butler and Raulston.

162. As a proximate result of the Ethics Commission and Albritton's negligent conduct, Plaintiffs suffered adverse terms and conditions of employment, financial loss, physical and mental pain and suffering, emotional distress, humiliation, mental anguish, trauma, embarrassment, loss of reputation, and loss of career opportunity.

163. As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

164. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory damages, damages for loss of career opportunity, damages for embarrassment, humiliation, and mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

**COUNT VII**
**INVASION OF PRIVACY**
**AGAINST DEFENDANTS**
**BUTLER, RAULSTON, ALBRITTON,**
**AND THE ALABAMA ETHICS COMMISSION**

165.   Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and 47-59 of this Complaint as if fully set out herein.

166.   This is a claim against Butler, Raulston, Albritton, and the Ethics Commission for invasion of Plaintiffs' right to privacy based on the laws of the State of Alabama.

167.   Defendants took actions seeking to invade the privacy of Plaintiffs by conspiring to bring false charges and fabricated evidence against them and giving publicity to private information about Plaintiffs that violated ordinary decency and putting Plaintiffs in a false, but not necessarily defamatory, position in the public eye and intruding into Plaintiffs' physical solitude and seclusion.

168.   Defendants' intrusion into the private activities of Plaintiffs during their investigation based on false evidence and fabricated complaints caused them shame,

embarrassment, humiliation, and worry because it created the perception and inference that Plaintiffs had engaged in criminal activity that was ethically wrong.

169. Defendants' intrusion into the private affairs and concerns of Plaintiffs based on false evidence, misrepresentations, false documents, and fabricated complaints was offensive and objectionable to Plaintiffs.

170. Defendants invaded Plaintiffs' personal and emotional sanctum by misrepresenting evidence and testimony that was contrived and false.

171. Defendants intruded into Plaintiffs' physical solitude and seclusion by requiring them to defend against false charges and Defendants' misrepresentations and falsifications during Defendants' deceptive and illegal investigation based on false charges and fabricated evidence.

172. Defendants placed Plaintiffs in a false light with their peers, employees, business contacts, and in the public they had long served as loyal and sworn law officers of the State of Alabama.

173. Defendants informed Plaintiffs' peers, employees, and business contacts that they had been found guilty of violations of the Alabama Ethics Act and that the matters would be referred to the District Attorney or the Attorney General for further legal proceedings. Defendants publicized this information and allowed others they conspired with to appropriate private and false information and

40

disseminate it in the public eye, including through media releases to portray Plaintiffs in a false and negative light.

174. Defendants' false portrayal of Plaintiffs and the illegal and unethical investigation damaged Plaintiffs' relationships professionally and personally and Plaintiffs' ability to interact and move freely in society.

175. Defendants' conduct proximately caused Plaintiffs to suffer embarrassment, humiliation, shame, physical injury, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which they claim damages as set out below.

176. As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

177. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory damages, damages for mental anguish, shame, and humiliation, costs,

interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT VIII
## MALICIOUS PROSECUTION
## AGAINST DEFENDANTS
## BUTLER, RAULSTON, ALBRITTON, AND
## THE ALABAMA ETHICS COMMISSION

178. Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and 47-59 of this Complaint as if fully set out herein.

179. This is a claim against Butler, Raulston, Albritton, and the Ethics Commission arising under the laws of the State of Alabama prohibiting malicious prosecution.

180. The Alabama Ethics Commission, Albritton, Raulston, and Butler directed, encouraged, and/or influenced the investigation of Plaintiffs.

181. The ethics complaints brought against Plaintiffs were without merit.

182. The ethics complaints brought against Plaintiffs were fraudulent.

183. The ethics complaints brought against Plaintiffs were pursued by Defendants knowing that they allegations were baseless and Defendants conspired to fabricate evidence, misrepresent facts and evidence, create false testimony, and have witnesses provide perjured testimony based on those misrepresentations to ensure Plaintiffs would be found guilty of ethics violations.

184. The complaints and investigation were brought against Plaintiffs and pursued with malice and a motive to eliminate Plaintiffs from the City of

42

Montgomery Police Department.

185. The complaints and investigation were brought against Plaintiffs to intentionally harm Plaintiffs and their families physically, financially, reputationally, and emotionally. The investigation was illegal and pursued negligently and/or with recklessness. There was no legal or lawful basis for Defendants' actions.

186. The complaints brought against Plaintiffs were pursued by Defendants even after Defendants had evidence and testimony that Plaintiffs had not violated any rules, ethics laws or statutory provisions of the State of Alabama or the City of Montgomery.

187. Evidence was illegally withheld from Plaintiffs that exonerated them so Defendants could maliciously prosecute false charges.

188. As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

189. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment,

humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, compensatory damages, damages for mental anguish, shame, and humiliation, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT IX
## DEFAMATION, LIBEL, AND SLANDER
## AGAINST DEFENDANTS
## BUTLER, RAULSTON, ALBRITTON, AND
## THE ALABAMA ETHICS COMMISSION

190. Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and 47-59 of this Complaint as if fully set out herein.

191. This is a claim against Butler, Raulston, Albritton, and the Ethics Commission arising under the laws of the State of Alabama prohibiting defamation, libel, and slander.

192. Defendants directed, encouraged, and/or influenced the dissemination of knowingly false complaints, false charges, false investigation, false evidence, false testimony, and misrepresentations against the Plaintiffs.

193. Defendants falsely accused Plaintiffs of unlawful and criminal conduct and then falsified documents, misled witnesses with false documents, and knowingly and negligently fabricated facts and testimony to damage Plaintiffs. Defendants made defamatory and slanderous statements about Plaintiffs before, during and after their fraudulent investigation that were all continued by Defendants to support its

conclusion that Plaintiffs were guilty of an unspecified violation of the Alabama Ethics Act. Plaintiffs were threatened with criminal prosecution.

194. In the alternative, Defendants were negligent and wanton in bringing false and fabricated charges against Plaintiffs and by making defamatory and slanderous statements about Plaintiffs before, during and after their fraudulent investigation.

195. These false and defamatory statements published by Defendants were *slander per se* and *slander per quod*. Defendants knew that their statements, that Plaintiffs had each committed ethics violations for personal and financial gain, were false, defamatory, and negligent when made.

196. Defendants' false and fabricated statements were made to ridicule, shame, and disgrace Plaintiffs. Specifically, Plaintiffs were disgraced within the City of Montgomery, the Montgomery Police Department, and in the community that they loyally served for years.

197. Defendants' statements about Plaintiffs, the fabricated investigation, the falsified documents and testimony, and the deliberately misrepresentations to witnesses, commissioners, and the public directly caused injury to Plaintiffs, their reputations, and their families.

198. Defendants' conduct against Plaintiffs was pursued with negligence to harm Plaintiffs and their families physically, financially, reputationally, and

45

emotionally.

199.    Defendants' conduct proximately caused Plaintiffs and their families to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages.

200.    As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

201.    As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of compensatory damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

**COUNT X**
**OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS**
**BUTLER, RAULSTON, ALBRITTON, AND**
**THE ALABAMA ETHICS COMMISSION**

202.    Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and

46

47-59 of this Complaint as if fully set out herein.

203.   This is a claim against Butler, Raulston, Albritton, and the Ethics Commission arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

204.   Defendants knew or should have known that bringing false charges, false evidence, false testimony, false representations and reporting, and conducting a false and misleading investigation against Plaintiffs would inflict emotional distress upon Plaintiffs.

205.   As a proximate consequence of Defendant's actions, both Plaintiffs lost their jobs.

206.   Defendants' adverse treatment of Plaintiffs, in particular subjecting them to severe, degrading, and humiliating harassment and ridicule, was outrageous, extreme, beyond the bounds of decency, and shocks the conscience.

207.   In particular, Defendants' actions shock the conscience because, by the very nature of their positions and titles with a state agency that polices the ethics of the State of Alabama, their own ethics should be beyond reproach and an example of what ethical conduct should be. However, Defendants' conduct is a sad and egregious example of how not to act, of unethical conduct.

208.   Further, Raulston and Albritton are attorneys licensed by the State of Alabama and are subject to the Rule of Professional Conduct and specifically to Rule

4.1 regarding truthfulness in statements to others.

209. Butler also professes a position as pastor[5], and as such, his ethics and propensity for truth should be held to a higher standard.

210. Here, Defendants' lack of candor is an understatement and the truth was manipulated by Defendants, evidence falsified, statements were flawed by misrepresentations, all in an effort by Defendants to doggedly pursue Finley and Reaves for trumped up ethical violations that had no basis in fact. That is outrageous in our society and more so based on Defendants' lack of ethics in their positions within the state.

211. Defendants' repeated treatment of Plaintiffs damaged their reputations, caused their loss of employment, and harmed their ability to seek other employment.

212. Defendants' conduct was malicious, intentional, willful, and employed to inflict severe emotional distress, embarrassment, physical trauma, and ridicule upon Plaintiffs.

213. Defendants' conduct was extreme and outrageous and has caused Plaintiffs severe distress. Because of Defendants' conduct, Plaintiffs have suffered monetary damages, embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages.

214. As a proximate consequence of Defendants' violation of the Fourteenth

---

[5] *See Butler v. Dunn*, Case No. 2:19-cv-530-ALB at *5 (M.D. Ala. 2019).

Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

215. As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of compensatory damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

**COUNT XI**
**INTERFERENCE WITH**
**CONTRACTUAL OR BUSINESS RELATIONS**
**AGAINST DEFENDANTS**
**BUTLER, RAULSTON, ALBRITTON, AND**
**THE ALABAMA ETHICS COMMISSION**

216. Plaintiffs incorporate by reference paragraphs 23-30, 32-33, 37-44, and 47-59 of this Complaint as if fully set out herein.

217. Plaintiffs had established business relationships and contacts within the Montgomery Police Department, the City of Montgomery, and the Montgomery County community at large.

218. Defendants had knowledge of these business relationships and sought to intentionally damage these relationships to Plaintiffs' financial, physical, and emotional detriment.

219. After conspiring among themselves and after bringing false complaints and fabricating evidence, testimony, documents, and reports against Plaintiffs, Defendants informed Plaintiffs' peers, subordinates, and business contacts, as well as the community at large, that Plaintiffs had each engaged in criminal activity and violated the Alabama Ethics Act.

220. Defendants portrayed Plaintiffs as criminals, dishonest, lacking integrity and truthfulness, and unethical police officers. Defendants threatened Plaintiffs with further legal action to include prison time. Defendants published this information so that Plaintiffs would lose their employment and to keep others from employing Plaintiffs in their careers of choice while suppressing exculpatory evidence.

221. Defendants' false portrayal of Plaintiffs' employment and the circumstances surrounding the false ethics complaint and investigation riddled with falsity, misrepresentations, and lacking any semblance of ethics damaged Plaintiffs' relationships and their ability to seek comparable employment and employment in their career choice. Plaintiffs were damaged as a result of Defendants' intentional interference.

222.   As a proximate result of Defendants' conduct, Plaintiffs were caused to suffer loss of employment, loss of wages and benefits, physical injury, pain and suffering, embarrassment, humiliation, loss of reputation, loss of career opportunity, emotional distress, trauma, and mental anguish for which they claim damages.

223.   As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will continue to suffer, damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

224.   As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief, an award of compensatory damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

### PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes (ASB-8327-E23A)
Attorney for Plaintiffs

51

52

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
Email: akhaynes@haynes-haynes.com

Heather Newsom Leonard
**HEATHER LEONARD, P.C.**
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
heather@heatherleonardpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon each of the below listed, via email and/or by placing same in the U. S. Mail, postage prepaid and properly addressed, this 4th day of December, 2023.

Terry G. Davis
Ronald B. Hatcher
DAVIS & HATCHER, PC
4183 Carmichael Road, Suite B
Montgomery, AL 36106

Jamie Helen Kidd Frawley
WEBB, MCNEILL & WALKER, P.C.
P.O. Box 238
Montgomery, AL 36101-0238

Scott Michael Speagle
Orin Clayton Odom, III
WEBSTER HENRY LYONS BRADWELL
       COHAN & SPEAGLE, P.C.
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104

Wilson F. Green
WILSON F. GREEN, LLC
301 19 Street North, Ste. 525
Birmingham, Alabama 35203

*/s/ Alicia K. Haynes*
OF COUNSEL