**FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

No. 25-12478

ERNEST N. FINLEY, JR.,
JENNIFER M. REAVES,

*Plaintiffs-Appellants,*

*versus*

STEVEN L. REED,
in both his official and individual capacities, et al.,

*Defendants,*

THOMAS ALBRITTON,
CYNTHIA RAULSTON,
BYRON BUTLER,
in their individual capacities,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00464-KKD-PBM

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether two police officers provided enough evidence for a jury to infer that state ethics officials fabricated evidence against them. Byron Butler, a special agent for the Alabama Ethics Commission, and Cynthia Raulston, the Commission's general counsel, investigated allegations of misconduct within the Montgomery Police Department. The Commission found probable cause that Ernest Finley, the Chief of Police, and Jennifer Reaves, the Deputy Chief of Operations, used public resources to advance private "financial interest[s]" in connection with a firearms assessment. ALA. CODE § 36-25-5(c)–(d). Finley and Reaves then sued Butler, Raulston, and the executive director for fabricating evidence during the investigation. The district court granted summary judgment for the ethics officials. Because Finley and Reaves failed to present substantial evidence of fabrication, we affirm.

## I. BACKGROUND

We describe the background of this appeal in three parts. We first recount the events that occurred during the Department's

October 2020 firearms assessment. We next explain the Commission's investigation of Finley and Reaves. We then describe the proceedings in the district court.

*A. The October 2020 Assessment.*

Ernest Finley became the Chief of Police of the Montgomery Police Department in 2015. He named Jennifer Reaves the Deputy Chief of Operations in 2020. Finley, Reaves, and all other members of the Department must maintain proficiency with firearms by completing regular "[q]ualifications."

Department policy 2.311 took effect in September 2012 and required "[a]ll sworn police officers . . . to qualify with their assigned handgun . . . at least twice a calendar year." The policy gave officers two attempts "to shoot a qualifying score of no less than 76." Officers who failed to qualify received one "Official Failure" and had to attend remedial training before they could attempt to qualify again. Official failures followed officers "throughout their career" and came with accumulating financial penalties. For "[t]hird and [s]ubsequent Official Failures," officers received "[l]oss of off-duty employment for six months," "[l]oss of take-home vehicle privileges for six months," and "[t]wo days [of] suspension with an additional day for each additional Official Failure." Four consecutive or eight cumulative official failures triggered termination.

Policy 3.2.4 purported to "[r]escind[]" policy 2.311 in June 2018. The new policy retained the requirements to achieve a qualifying score of 76 within two attempts and to attend remedial training upon failing. But policy 3.2.4 eliminated many of the financial

penalties under policy 2.311 and provided that prior qualification failures would "roll off every 12-month period." Policy 2.311 nevertheless remained "active" in the Department's internal computer system. A search for "firearms" in the system yielded policy 2.311 instead of policy 3.2.4. Several supervisors believed that policy 2.311 still controlled. And some supervisors continued to discipline officers under policy 2.311.

The Department held handgun qualifications in October 2020. Sergeant Matthew Hoffman announced the qualifications in a memorandum that specified that "[o]fficers who fail to qualify after two attempts must go to the . . . remedial [course] on Friday, October 23." After seven officers failed on October 19, Chief of Staff Zedrick Dean emailed the supervisors to "remind any of [their] personnel who failed qualifications [that they] will not be able to work off-duty jobs until they clear remedial." Dean's reminder invoked the disciplinary penalties imposed by policy 2.311.

Reaves attempted to qualify on October 20 but failed for the fourth time in her career. Under policy 2.311, her failure would trigger a three-day suspension and restrict her vehicle privileges and off-duty employment opportunities. Under policy 3.2.4, she would only have to participate in a counseling discussion and attend remedial training.

The parties dispute what happened next. Some evidence suggests that Reaves asked Finley for a third attempt. Other evidence suggests that Finley previously decided that "everybody de-

serves a third round" and applied that rule to Reaves when he discovered her failure. Whatever the sequence, Finley gave Reaves another chance, and this time Reaves qualified. Confusion ensued when other failing officers were not immediately given the same opportunity.

Late on October 21, Captain Kedrick Miliner emailed all the failing officers that Finley had approved third attempts for the following day. Finley later directed that no officers be disciplined for failures that week. He also changed the policy for future qualifications by giving officers three attempts to achieve a minimum score of 70. The Department implemented this change by amending both policy 2.311 and policy 3.2.4.

*B. The Commission's Investigation.*

Lieutenant Marcus Webster believed that Finley abused his authority by changing the rules to accommodate Reaves. After reporting Finley to the civil investigations unit, Webster filed a complaint with the Alabama Ethics Commission, *see* ALA. CODE § 36-25-4(a)(7), alleging that Finley gave Reaves "special treatment" during the qualifications and "change[d] the standard to fit one person." Webster attached documents in support, including the full text of policy 2.311, the memorandum from Sergeant Hoffman, and a disciplinary form for Officer J. C. Richardson. The disciplinary form stated that Richardson failed the October 2020 qualifications "in violation of departmental policy 2.311."

The Commission assigned Special Agent Byron Butler to investigate Webster's complaint. In January 2021, Butler asked City

Attorney Stacy Bellinger to send him a copy of the Department policies in place during the most recent qualifications. Bellinger forwarded two copies of policy 2.311 with effective dates in September 2012 and November 2020, respectively. Bellinger then called Butler in April to explain that Lieutenant Raymond Carson, the Department's "policy guy," had noticed policy 3.2.4. She told Butler that policy 3.2.4 technically rescinded policy 2.311 but stated that the Department was "still operating under" policy 2.311 because "a memo . . . went out from [Sergeant Hoffman] right before qualification . . . attach[ing]" it.

Bellinger later learned that Hoffman did not attach policy 2.311 to his memorandum. She assumed "incorrectly" that the documents went together because "[w]hen city investigations scanned the information" from Webster's complaint, it "scanned [the] memo and the copy of policy 2.311 as one document." But Bellinger never advised Butler of her mistake.

Other conversations suggested that policy 2.311 still applied. On April 16, Bellinger told Butler that the policy "remained active in the system" and reiterated that it "w[as] attached to a memorandum sent out by the range master prior to [the] October . . . qualifications." The same day, Webster told Butler that policy 2.311 was "operating." Webster also sent contemporaneous screenshots showing the November 2020 version of policy 2.311 in the system. Two days later, Butler asked Bellinger for any documents establishing that officers were "disciplined for being in violation of . . . policy 2.311 . . . from 2018 to present." Bellinger responded with some

disciplinary forms citing policy 2.311 and others citing policy 3.2.4. The Richardson form that Webster attached to his complaint was not among these materials. Nor was that form in Richardson's personnel file. But Bellinger included an active form for Officer C. M. Williams that cited policy 2.311 and had a counseling date of October 20, 2020.

Butler interviewed witnesses on May 11 and May 13. Cynthia Raulston, as general counsel, assisted Butler with the questioning. Butler and Raulston asked the witnesses about Hoffman's memorandum and, in some cases, represented that policy 2.311 was attached. They also presented witnesses with a redacted version of the Richardson form and erroneously stated that it was still in his file.

Butler notified Finley and Reaves the next week that the Commission "received a complaint alleging that [they] may have violated the Alabama Ethics [Act]." Finley's notice cited a provision prohibiting public officials from using public resources "for the private benefit" of "any other person" in a manner that "would materially affect his or her financial interest." *Id.* § 36-25-5(c). Reaves's notice cited a parallel provision prohibiting any person from "solicit[ing]" a public official for such a benefit. *Id.* § 36-25-5(d).

The Commission held a hearing on August 4 "to determine whether [there was] probable cause" that Finley and Reaves committed ethics violations. *Id.* § 36-25-4(i). Butler and Raulston argued that Reaves solicited, and Finley approved, the use of Department resources to shoot a third time. They contended that the handgun

qualifications affected Reaves's financial interest because she could face a three-day suspension and lose her take-home vehicle if Finley applied policy 2.311 as written. Although Finley's and Reaves's attorneys had copies of policy 3.2.4, they elected not to dispute that policy 2.311 remained in effect during the October 2020 qualifications.

The Commission found probable cause that Finley and Reaves each committed an ethics violation. It publicly announced its decision and referred the matter to the Attorney General of Alabama for review. *See id*. But the Attorney General determined that Finley and Reaves were innocent. He stated that Butler and Raulston used "false evidence" and "material misrepresentations of fact" to mislead the Commission into finding probable cause. The Commission conducted an internal investigation in response and concluded that Butler and Raulston did not falsify evidence or make any misrepresentations.

*C. The Litigation.*

Finley and Reaves sued Butler, Raulston, and Thomas Albritton, the Commission's executive director. *See* 42 U.S.C. § 1983. They alleged that the ethics officials violated due process by "us[ing] false evidence, false testimony, and material misrepresentations" to secure a finding of probable cause. They also brought an equal-protection claim, a conspiracy claim, and claims under Alabama law.

The ethics officials moved for summary judgment and invoked qualified immunity. The district court entered judgment for

the ethics officials on the federal claims and declined to exercise supplemental jurisdiction over the state-law claims.

## II. STANDARD OF REVIEW

We review *de novo* whether the ethics officials are entitled to summary judgment based on qualified immunity. *See Marbut v. Phillips*, 176 F.4th 1256, 1262 (11th Cir. 2026).

## III. DISCUSSION

Public officials "acting within their discretionary authority" enjoy qualified immunity from suit unless their conduct "violate[s] clearly established statutory or constitutional rights." *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020) (citation modified). Finley and Reaves do not dispute that the ethics officials acted within their discretionary authority. And the ethics officials do not dispute that fabricating evidence during an investigation violates due process. We assume without deciding that the parties' understanding of due process is correct. To the extent that fabrications before an investigatory body can deprive a person of "life, liberty, or property" under the Due Process Clause, U.S. CONST. amend. XIV, § 1, the ethics officials are still entitled to summary judgment because no reasonable jury could find that they fabricated evidence.

We begin with Albritton. Finley and Reaves argue that "Defendants" engaged in fabrication. But their briefing as to Albritton states only that he "was present" for misconduct committed by Butler and Raulston. We have long held that officials "in an investigative role" do not "violate clearly established law . . . by failing

to act in the face of knowledge that another offic[ial] ha[s] fabricated" evidence. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002) (citing *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999)). So Albritton is entitled to qualified immunity.

Butler and Raulston also enjoy qualified immunity. Finley and Reaves say that Butler and Raulston fabricated evidence by obscuring the rescission of policy 2.311, telling witnesses that Hoffman attached the policy to his memorandum, and presenting a redacted version of the Richardson form not in his file. But a reasonable jury could not find evidence of fabrication under any of these theories.

Fabrication requires bad faith. When criminal defendants seek relief for false evidence presented at trial, they must prove that "the prosecutor knowingly used perjured testimony" or "failed to correct what he subsequently learned was false." *United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017) (citation modified). "[H]onest mistakes" are insufficient. *United States v. Al Jaberi*, 97 F.4th 1310, 1327 (11th Cir. 2024); *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010); *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981). Consistent with these precedents, examples of fabrication involve "evidence that was falsely created" with an intent "to link the accused to a crime." *Rehberg v. Paulk*, 611 F.3d 828, 841 (11th Cir. 2010); *see, e.g.*, *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) (planting drugs); *Jones*, 174 F.3d at 1289–90 (manufacturing a boot print).

Butler and Raulston had good-faith reasons to believe that policy 2.311 remained effective even if policy 3.2.4 purported to rescind it. *Cf. Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1285 (11th Cir. 2025) (explaining that some policies are "official" and others stem from "custom or practice" (citation modified)). Dean invoked policy 2.311's off-duty consequences in his October 2020 email. Webster cited the policy when he filed his November 2020 complaint. Bellinger told Butler multiple times that the policy was still operational after the attempted rescission. Carson stated that policy 2.311 was the "only thing you were going to get" upon searching for "firearms" in the Department's system. Screenshots confirmed that it remained active in the system. And Finley approved an updated version labeled "2.311" that "[a]mend[ed] 2.311" following the 2020 qualifications without suggesting that policy 3.2.4 had already superseded it.

Concessions during discovery also support Butler and Raulston. Finley agreed at his deposition that "Butler had the right to rely on anything that . . . Bellinger told him" about the applicable policies. Finley's attorney acknowledged that he was "personally aware" that policy 3.2.4 purported to rescind policy 2.311 and chose not to make a rescission argument because "certain people in the Department believed that 2.311 was still in effect" and "2.311 was amended in November of 2020." Reaves's attorney likewise testified that she knew about policy 3.2.4 yet never "argue[d] to the Ethics Commission that 2.311 was [ineffective or that] . . . it had been rescinded."

Finley and Reaves fare no better when it comes to Hoffman's memorandum. Although Butler and Raulston erroneously told multiple witnesses that Hoffman attached policy 2.311, their statements reflected their honest belief. The file prepared by the investigations unit compiled the "memo and the copy of policy 2.311 as one document." Bellinger then told Butler during an April 2021 phone call and in a follow-up email the next day that Hoffman's memorandum "attach[ed] th[e] policy." These communications preceded the witness interviews by less than a month. And Bellinger testified at her deposition that she never informed Butler of her mistake. At least one other witness had the same mistaken recollection as Bellinger. Another witness told Butler that it was customary for Hoffman to send a memorandum and the policy before qualifications.

Nor did Butler and Raulston fabricate a disciplinary form. To be sure, they presented a form for Officer Richardson to witnesses and the Commission that was not in his disciplinary file. But no reasonable jury could find that they "falsely created" evidence with a bad faith intent "to link [Finley] to" an ethics violation because Officer Williams had a similar form in his file. *Rehberg*, 611 F.3d at 841. Finley and Reaves attempt to downplay the Williams form because it "was filed in error and later removed." But the fact remains that at least one officer who failed the October 2020 qualifications faced discipline under policy 2.311, which was the very thing Butler and Raulston were trying to establish with the Richardson form. And nothing in the record suggests that anyone had removed Williams's disciplinary form when Butler and Raulston

spoke with witnesses or presented their case to the Commission. To the contrary, Finley's attorney acknowledged before the Commission that it was possible the Department had not yet retracted all disciplinary forms relating to the October 2020 qualifications.

Finley and Reaves insist the mix-up with Richardson's form was no accident because Butler and Raulston redacted his name "to make [the form] difficult to contradict." But there could not have been a contradiction because Butler and Raulston used the form to make the general assertion that an unidentified officer had an active disciplinary form. In the light of the Williams form, that assertion was correct.

Finley and Reaves also rely on the Attorney General's conclusions that Butler and Raulston made "material misrepresentations" and "rel[ied] upon demonstrably false evidence." But the Attorney General had no opportunity to consider much of the evidence that establishes Butler's and Raulston's good faith. Bellinger's testimony about Hoffman's memorandum, Finley's testimony about Butler's ability to rely on Bellinger, and counsel's testimony about policy 2.311 all postdated the Attorney General's report. These additions to the record amplify other evidence predating the report, including Dean's email to supervisors, Bellinger's phone call with Butler, Carson's statements about the Department's system, and Williams's disciplinary form. Finley and Reaves cannot reach a jury by ignoring dispositive "evidence that was

available to the district court at the time" it granted summary judgment. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the ethics officials.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 17, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 25-12478-CC
Case Style: Ernest Finley, Jr., et al v. Thomas Albritton, et al
District Court Docket No: 2:23-cv-00464-KKD-PBM

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 25-12478

ERRATA

---

ERNEST N. FINLEY, JR.,
JENNIFER M. REAVES,

*Plaintiffs-Appellants,*

*versus*

STEVEN L. REED,
in both his official and individual capacities, et al.,

*Defendants,*

THOMAS ALBRITTON,
CYNTHIA RAULSTON,
BYRON BUTLER,
in their individual capacities,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00464-KKD-PBM

The opinion of the court has been changed as follows:

On page 12, "Raulerson" has been changed to "Raulston."